## Estate of Cavanaugh
### v.
### Ohio Casualty Group
*[Cite as 6 AOA 37]*

*Case No. 12-89-2*
*Putnam County, (3rd)*
*Decided August 1, 1990*

*M. Donald Carmin, Attorney at Law, Eastman & Smith, 800 United Savings Building, Toledo, Ohio 43604-1141, for Defendant-Appellant, Cross-Appellee.*

*David W. Fassett, Attorney at Law, Sabol, Fisher & Fassett, 128 West High Street, Lima, Ohio 45801, for Plaintiffs-Appellees, Cross-Appellants.*

*Robert Balyeat, Attorney at Law, 1728 Allentown Road, Lima, Ohio 45805, for Defendants-Appellees.*

BRYANT, J.

This is an appeal and a cross-appeal by defendant appellant-cross appellee, The Ohio Casualty Group of Insurance Companies (Ohio Casualty), and plaintiff appellee-cross appellant, The Estate of Anthony B. Cavanaugh (Cavanaugh) from a declaratory judgment of the Court of Common Pleas of Putnam County.

On December 13, 1985, Anthony B. Cavanaugh, an employee of Ottawa Oil Transportation Company (Ottawa Oil), while driving his employer's vehicle, was killed in a collision caused by an uninsured motorist.

In consequence of Cavanaugh's death, his executrix filed her uninsured Motorist claim with Ohio Casualty, liability insurer of the Ottawa Oil vehicle. Ohio Casualty denied her claim asserting non-coverage by the Ottawa Oil policy.

On September 17, 1987, Cavanaugh brought suit for -declaration of uninsured Motorist coverage by the Ohio Casualty policy issued to Ottawa Oil.

Answering Cavanaugh's complaint, Ohio Casualty also cross-claimed for a declaratory judgment of no uninsured motorist coverage by Ottawa Oil's policy, citing rejection of coverage by the insured acting by its President, Robert Kruse.

Upon trial, the court found that Kruse, acting for Ottawa Oil, had rejected uninsured motorist coverage when it was offered.

The trial court found further, however, that recitations included on the policy declarations page rendered the policy ambiguous concerning its inclusion or not of uninsured motorist coverage.

Interpreting the policy most favorably for the insured in overcoming the perceived ambiguity, the trial court declared that the policy afforded uninsured motorist coverage to an insured and that the rejection of such coverage by the named insured was moot.

The court further declared the limits of liability to be those offered by the Ottawa Oil liability coverage augmented by the excess liability or umbrella coverage also issued by Ohio Casualty to Ottawa Oil.

We address Ohio Casualty's first assignment of error and Cavanaugh's related cross assignment of error together for convenience and brevity.

Ohio Casualty's first assignment of error is:

"THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS UNDERINSURED MOTORIST COVERAGE BECAUSE THE PREPRINTED UNDERINSURED MOTORIST ENDORSEMENT WAS INCLUDED IN THE POLICY PACKET AND THE ENDORSEMENT NUMBER REFERRED TO ON THE DECLARATION PAGE AFTER FINDING THAT THE COVERAGE WAS REJECTED BY THE NAMED INSURED ID NO PREMIUM WAS CHARGED FOR THE COVERAGE."

Cavanaugh's assignment of error is:

"THE TRIAL COURT ERRED IN DETERMINING THAT ROBERT KRUSE, A NAMED INSURED, SIGNED AN UNINSURED REJECTION STATEMENT IN THE YEAR 1982."

R.C. 3937.18(A)(1) and (2) provide for the mandatory offering of uninsured and underinsured motorist coverage by automobile or motor vehicle liability policies issued in Ohio, unless the insured to whom such is offered expressly rejects it.

In *Abate v. Pioneer Mutual Casualty Co.* (1970), 22 Ohio St. 2d 161, the Ohio Supreme Court explained that pursuant to R.C. 3937.18(C) " *** the *only* way in which the coverage can be eliminated from the insurance contract is by the overt refusal by the insured to accept it. *** " (Emphasis added.)

Here, the trial court found rejection of coverage. If there is substantial credible evidence in the record to support that finding, it must be accepted.

The record discloses the trial testimony of the insurance agent who accepted Kruse's rejection of uninsured motorist coverage:

"Q. Now, your testimony was that you believe a rejection was signed by Mr. Kruse sometime in 1982?

"A. I think I testified that I know a rejection slip.

"Q. I am referring to the time.

"A. Approximately 1982. I cannot be exactly sure of the time.
"***

"Q. Specifically what do you claim Mr. Kruse wrote on this rejection?

"A. It's Mr. Kruse, and he did sign his name and check the block stating I reject uninsured and underinsured motorist.
"***

"Q. Okay. And it is your testimony that Mr. Kruse just signed his name?

"A. Signed, dated and checked the box. I believe that is the procedure that we did at this time."

The claimed signator, Mr. Kruse, in his testimony confirmed that he had probably signed such a rejection form, but could not state the date.

In our view, the foregoing testimony and acknowledgement is sufficient to support the trial judge's finding of fact that the uninsured motorist insurance coverage in question was rejected by the named insured when offered to him.

R.C. 3937.18(C) specifically provides that an insured may reject or accept the mandatory offer of uninsured and underinsured motorist coverage. If rejected, upon renewal of the policy the insurer is not required to re-offer the coverage nor to include such coverage in the renewal unless the insured specifically requests in writing that such be added to the policy. The record here is devoid of evidence of such a request by the named insured.

The plaintiff appellee in this case is the personal representative of a deceased employee of a company insured by a motor vehicle liability insurance policy issued by defendant appellant. The employer, having no duty to provide uninsured motorist insurance for an employee driving a company vehicle, has chosen to reject such coverage. There is no dispute between the insurer and the named insured who agree that uninsured motorist coverage was rejected. The evidence at trial confirmed rejection of coverage to the trial court's satisfaction.

Plaintiffs' decedent, as an other insured by the terms of the Ohio Casualty insurance contract, has no right to greater coverage than bargained for by the named insured. Any real or imagined ambiguity of the notations on the declarations page of the Ohio Casualty liability policy can hardly be said to have misled the named insured to believe it had obtained a benefit which it expressly rejected.

Where, as here, the contracting parties agree that they have not included uninsured motorist insurance coverage in their contract, no occasion

has arisen for application of the principle of contract interpretation to determine the intent of the parties regardless of any ambiguity of their contract terms perceived by others.

We believe the trial court erred by its declaration of existing uninsured motorist coverage by the Ohio Casualty liability policy issued to Ottawa Oil contrary to the express rejection of such coverage by the named insured.

For the foregoing reasons the appellant's first assignment of error is sustained.

Cross-Appellant's assignment of error, accordingly, is overruled.

Appellant's second assignment of error is: "THE TRIAL COURT ERRED IN DETERMINING THAT THE UMBRELLA POLICY WAS APPLICABLE AND AVAILABLE TO PLAINTIFF-APPELLEE SINCE THE TERMS OF THE UMBRELLA POLICY NOR THE POLICY ITSELF WERE NOT ENTERED INTO EVIDENCE AND THE TERMS AND CONDITIONS THEREOF ARE UNKNOWN."

In *Cincinnati Ins. Co. v. Siemens* (1984), 16 Ohio App. 3d 129, the court of appeals held that the umbrella policy there considered provided uninsured motorist benefits to the insured because " *** the umbrella endorsement provided for automobile liability coverage" *** and the insurer never offered the insured "any uninsured motorist coverage in conjunction with the issuance of the umbrella endorsement." That decision was approved by the Supreme Court in *Duriak v. Globe American Cas. Co.* (1986), 28 Ohio St. 3d 70 and was followed in *House v. State Auto Mut. Ins. Co.* (1988), 44 Ohio App. 3d 12.

All these case authorities have considered umbrella policies which offer automobile liability coverage by their express terms or are otherwise expressly related to an applicable underlying automobile liability policy by the same or another insurer as affording uninsured motorist benefits to the insured. None of the authorities cited has considered a circumstance of rejected underlying uninsured motorist coverage as is present here. We are unable to determine from the record that the umbrella coverage affords automobile liability benefits independently of the underlying policy.

The entire evidence of umbrella coverage appearing in the record is contained in the testimony of the insurance representative who handled the Ottawa Oil insurance account.

"Q. What are the liability policy limits on this insurance policy?

"A. 250,000 per 500 per occurrence and bodily injury, and 100,000 property damage.

"Q. Is there any umbrella policy associated with these policies?

"A. Yes, sir.

"Q. And what is the limit of liability concerning the umbrella policy?

"A. 5,000,000.

"Q. Pardon me?

"A. 5,000,000. I am doing that by memory. I haven't looked at that policy.

"Q. Please pull that policy.

"A. Got it.

"Q. As of December 13, 1985, the policy that was in effect is the policy we are talking about; correct?

"A. Correct.

"Q. And what is the umbrella limit of liability concerning this policy?

"A. $5,000,000 for any one occurrence and personal injury, property damage, or advertising offense. And $5,000,000 advocate on occurrences *** Excuse me. Correct that. $5,000,000 on account of all occurrences during the policy year for the completed operations."

The document to which the witness refers is not a part of the record, not having been offered or received in evidence.

While appellee argues that the reference to umbrella coverage quoted is sufficient to afford liability limits to concomitant uninsured motorist coverage, we are not persuaded that such is true where no underlying coverage exists.

Moreover, none of the pleadings of the parties below refer to the existence of umbrella coverage or raise an issue in that regard. No express declaration concerning such was asked.

Moreover, the issue was not fully developed at trial and no apparent attempt was made 'to do so. Although Civ. R. 15(C) permits amendment of pleadings after trial to conform to evidence adduced upon issues outside the pleadings fairly tried by agreement or acquiescence, we do not deem such to be proper when applied to the brief and unexplained reference to umbrella coverage quoted above.

We note that at the commencement of trial below, the court and counsel focused inquiry upon two principle issues for declaration. Before proceeding with its evidence of rejection of uninsured motorist coverage by its insured, counsel for Ohio Casualty, Mr. Carmin, clarified those limited issues:

"THE COURT: Any other preliminary matters prior to the hearing?

"MR. CARMIN: Correct me if I am wrong. We have agreed and stipulated it is a two-issue case. One, was there an effective rejection of the uninsured, underinsured motorist coverage? And two, even if there were, does the policy still grant coverage due to the fact there is an endorsement included thereon?

"THE COURT: Mr. Fassett, is that your understanding of the issues to be presented to the Court?

"MR. FASSETT: Yes, sir, Your Honor.

"THE COURT: All right. Mr. Carmin, you may proceed."

We believe the trial court's judgment goes beyond those issues and the evidence.

We are unwilling to adjudge, as a matter of law, the coverage and effect of an insurance contract, the entire terms of which as fact are not before us. We hold that the trial court erred by doing so. Appellant's second assignment of error is also sustained.

For error appearing in the record as shown by the assignments of error and arguments of appellant, the judgment of the Court of Common Pleas of Putnam County is reversed and this court entering the judgment the lower court should have entered declares that the terms of the contract of insurance between Ottawa Oil Transportation Co., as insured, and The Ohio Casualty Group of Insurance Companies, as insurer, affords no uninsured motorist insurance benefits to the insured as a result of the insured having rejected such insurance when offered.

*Judgment reversed.*

SHAW, P.J., and EVANS, J., concur.