THE CINCINNATI INSURANCE COMPANY, APPELLEE, *v.* SIEMENS ET AL., APPELLANTS.

130

(No. L-83-370—Decided
March 30, 1984.)

Mr. H. William Bamman and Mr. Stephen E. Ahern, for appellee.

Mr. Alan L. Mollenkamp, for appellants.

DOUGLAS, J. This case comes before this court on appeal from judgment of the Lucas County Court of Common Pleas.

This case arises from a dispute between appellee, the Cincinnati Insurance Company, and its insureds, appellants Donald and Marcia Siemens, regarding the policy limits applicable to a claim, filed by appellants, for personal injuries sustained as a result of a motor vehicular accident with an uninsured motorist which occurred on or about December 7, 1982. At that time, appellants were policyholders of a homeowners' policy of insurance, effective from May 30, 1980 to May 30, 1983, issued to them by appellee. Automobile coverage was provided under a homeowners' automobile endorsement, effective from May 30, 1982 to May 30, 1983. That endorsement provided coverage with liability limits of $100,000 for each person, $300,000 for each accident and $3,000 for medical payments for each of three covered vehicles, and further provided for uninsured motorist protection in the same amounts.

On June 28, 1982, appellee issued appellants a personal umbrella liability endorsement with a $1,000,000 liability limit in response to appellants' inquiry regarding the necessity of additional coverage because of the construction of a swimming pool on their property. After the occurrence of the motor vehicular collision in which appellant Donald Siemens sustained severe personal injuries, appellants filed a demand for arbitration with the American Arbitration Association for recovery under the homeowners' insurance policy, contending that the policy limit for uninsured motorist coverage was $1,300,000 pursuant to the $1,000,000 limit of the umbrella endorsement and $100,000 limit of the automobile endorsement stacked for the three vehicles covered and that the policy limit for medical payment coverage was $9,000 pursuant to the $3,000 limit stacked for the three vehicles covered.

On April 20, 1983, appellee filed a complaint for declaratory judgment in the Lucas County Court of Common Pleas, seeking a declaration of the policy limit for uninsured motorist coverage which appellee contended to be $100,000. Prior to trial, appellants reduced their claim as to the uninsured motorist coverage from $1,300,000 to $1,100,000, presumably recognizing, as stated in their appellate brief, that the stacking of the medical payments and uninsured motorist coverage for the three vehicles covered under the policy would not be permitted under Ohio law. Thus, the only issue remaining for the trial court's determination was the applicable policy limit for uninsured motorist coverage.

On November 1, 1983, the trial court entered judgment, finding that the umbrella endorsement provided liability insurance protection only and did not provide uninsured motorist coverage, expressly or by operation of law, and declared the limit of the uninsured motorist coverage to be $100,000.

From that judgment, appellants appeal, presenting the following assignment of error:

"The judgment of the trial court must be reversed because the trial court erred in ruling that the umbrella endorsement issued to the appellants did not provide uninsured motorist protection."

In support of their assignment of error, appellants argue that appellee was

required to offer appellants an equivalent amount of uninsured motorist coverage when it issued the umbrella policy in accordance with the provisions of R.C. 3937.18 (amended, effective June 23, 1982), which provided, at the time, as follows:

"(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in the state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto * * * for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. The named insured shall have the right to reject such uninsured motorist coverage * * *."

Our review of the record discloses that the umbrella endorsement provided for automobile liability coverage[1] and that appellee never offered appellants any uninsured motorist coverage in conjunction with the issuance of the umbrella endorsement.

In reaching its decision, however, the trial court relied upon the reasoning of the Alabama Supreme Court in *Trinity Universal Ins. Co.* v. *Metzger* (Ala. 1978), 360 So. 2d 960, wherein that court drew the following distinction at 962:

"Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued, a primary policy (the 'underlying policy') must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute."

Considering the language of R.C. 3937.18 requiring the offering of

---

[1] The personal umbrella liability endorsement provides, in pertinent part, as follows:

"Part II 2. For accidents caused by the use of automobiles: You are covered for any accident involving an automobile you own, borrow, rent or use as a temporary substitute. — We'll also cover anyone else who uses your automobile with your permission provided it's used for the purpose you intended. — We'll cover all relatives for any accidents involving an automobile they own, rent, or use as a temporary substitute. But if they borrow an automobile, they're covered only if they drive or use it with the owner's permission. Even then they have to use it for the purpose intended by the owner. — We'll cover anyone using an automobile owned by a relative if they have your relative's permission and use it for the purpose intended. — We'll also cover any person or organization legally responsible for the use of an automobile, if it's used by you or with your permission. But again, the use has to be for the intended purpose. — We will not cover the owner of a borrowed or rented automobile or his agents or employees. Nor will we cover sales agencies, repair shops, service stations, storage garages or public parking lots and their agents and employees."

equivalent uninsured motorist coverage upon the issuance of automobile liability insurance, we find the foregoing to be a distinction without a difference. Rather, we concur in the decision of the Florida Court of Appeals in *Aetna Cas. & Sur. Co.* v. *Green* (Fla. App. 1976), 327 So. 2d 65, wherein that court held that an excess indemnity policy was a policy of "automobile liability insurance" requiring the offering of uninsured motorist coverage, reasoning, at 66, as follows:

"As indicated by their serial numbers and other evidence the comprehensive liability policy numbered 76AL 800707 CCA and the excess indemnity policy numbered 76XS 800707 WCA were parts of a general insurance program. The insured vehicles were listed on policy numbered 76AL 800707 CCA and it in turn was listed as an underlying insurance on policy numbered 76XS 800707 WCA. The policies were different in form but the excess indemnity policy 'covered liability arising out of the ownership, maintenance or use of' a motor vehicle, and we consider these words as used in § 627.727(1), Florida Statutes to be in apposition to the phrase 'automobile liability insurance' rather than in amplification, since any policy of automobile liability insurance would provide at least that coverage."

For the foregoing reasons, we find that, in issuing the umbrella endorsement, appellee issued appellants automobile liability insurance requiring the offering of uninsured motorist coverage in accordance with R.C. 3937.18. Since appellee failed to so offer appellants uninsured motorist coverage, we further find the policy limit to be $1,100,000. We, therefore, find appellants' assignment of error well-taken.

On consideration whereof, the court finds that substantial justice has not been done the parties complaining and judgment of the Lucas County Court of Common Pleas is reversed. Coming, now, pursuant to App. R. 12(B), to enter the judgment that the trial court should have rendered, it is hereby ordered, adjudged and decreed that the policy limit with respect to appellants' claim is $1,100,000.

*Judgment reversed.*

HANDWORK and RESNICK, JJ., concur.