Attorneys for Appellant

Joseph Stalmack

Hammond, Indiana

Attorneys for Appellee

Terrance L. Smith

Highland, Indiana

IN THE

INDIANA SUPREME COURT

UNITED NATIONAL INSURANCE COMPANY,

Appellant (Plaintiff Below),

v.

ADELE M. DEPRIZIO,

Appellee (Defendant Below).

)

) Supreme Court No.

) 94S00-9802-CQ-113

)

) 

) 

)

)

)

CERTIFIED QUESTION FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF INDIANA  COURT

The Honorable Rudy Lozano, Judge

Cause No. 2:97-CV-89-RL

CERTIFIED QUESTION

February 3, 1999

SULLIVAN,  Justice.

Terrence DePrizio was fatally injured on the job by an uninsured motorist.  DePrizio collected the policy limits from his employer’s auto insurance carrier and sought to collect additional damages from its umbrella insurance carrier.  The umbrella carrier responded that its policy did not cover excess uninsured motorist claims.  In response to a certified question,
(footnote: 1) we hold that Indiana’s underinsured motorist statute requires an umbrella policy that covers excess third-party automobile liability claims to also cover excess uninsured motorist claims.  

Background

Track Services, Inc., is a corporation based in Griffith, Indiana.  As part of its operations, Track maintained a multi-tiered program of liability insurance, consisting of several primary policies and an umbrella liability policy.  At the primary level, Track maintained insurance coverage for worker’s compensation and employer’s liability, comprehensive general liability, and automobile liability.  Track’s primary automobile liability coverage consisted of a “Business Auto Policy” issued by Liberty Mutual Insurance Group (“Liberty Mutual”), covering Track’s automobiles, trucks, and trailers registered and/or garaged in the State of Indiana.  The policy provided personal injury protection, comprehensive and collision physical damage coverage, medical payment coverage, as well as uninsured and underinsured motorist coverage. 

The United National Insurance Company issued Track an “umbrella” policy for the period of November 1, 1995 to November 1, 1996.  It was designed to cover Track’s ultimate net loss in excess of the applicable underlying policy limits and could, in certain situations, provide primary insurance coverage over a prescribed limit to fill gaps in the insured’s primary insurance program.

Terrance DePrizio was an officer of Track.  While on Track business in December, 1995, he was fatally injured in an automobile accident with a fifteen-year-old driver insured by State Farm Insurance Company.  Shortly after the accident, State Farm tendered its $100,000 policy limits to the Estate of Terrence DePrizio.   Because the damages resulting from Mr. DePrizio’s death exceeded the limits of that policy, the Estate made a claim for underinsured motorist coverage under Track’s Business Auto Policy.  Liberty Mutual subsequently tendered the balance of its policy limits, reduced by the amount paid by State Farm, to the Estate.  Finding that these payments were still insufficient to compensate for the loss of Mr. DePrizio, the Estate made a claim for excess coverage under Track’s umbrella policy.

In a letter dated June 21, 1996, United National responded to this claim by advising the Estate that the umbrella policy did not provide uninsured, underinsured, personal injury, or any similar type coverage.  Subsequently, United National filed suit in the United States District Court for the Northern District of Indiana, seeking a declaration that its policy does not provide uninsured/underinsured motorist coverage.

By order dated February 20, 1998, the U.S. District Court ruled that the umbrella policy did not provide underinsured coverage by its own terms.  However, it found the issue of whether Indiana’s uninsured/underinsured motorist statute applies to umbrella liability policies to be one of first impression in the State of Indiana and appropriate for certification.  We agreed to accept the question by order dated March 6, 1998.  

Discussion

We are called upon here to determine whether a commercial umbrella liability insurance policy is an “automobile liability or a motor vehicle liability policy” which, under our underinsured motorist statute, must provide uninsured and underinsured motorist coverage.  
See
 Indiana Code §27-7-5-2(a)(1998). 

The task before us does not require an interpretation of the provisions of United National’s umbrella policy.  It is undisputed that the umbrella policy afforded coverage to the insured in excess of the limits of the underlying policies for liability to third persons.
(footnote: 2)  Given that one such underlying policy was for automobile liability, this excess coverage clearly included liability arising out of  the ownership, maintenance or use of a motor vehicle by or on behalf of the insured.
(footnote: 3)  And, in earlier proceedings, the District Court interpreted the umbrella policy as one that does not expressly provide for uninsured/underinsured motorist protection.
(footnote: 4) 

Instead, the question for this Court is to interpret  Indiana’s uninsured/underinsured motorist statute:

The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance. . . insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, or in a supplement to such a policy, the following types of coverage:

(1) in limits for bodily injury or death and for injury to or destruction of property not less than those set forth in IC 9-25-4-5 
[
(footnote: 5)]
  under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, and for the protection of persons insured under the policy who are legally entitled to recover from damages from owners or operators of uninsured motor vehicles for injury to or destruction of property resulting therefrom; or

(2)  in limits for bodily injury or death not less than those set forth in IC 9-25-4-5 under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured or underinsured vehicles because of bodily injury, sickness or disease, including death resulting therefrom. 

The uninsured and underinsured motorist coverage must be provided by insurers for either a single premium or for separate premiums, in limits at least equal to the limits of liability specified in the bodily injury provisions of an insured’s policy, unless such coverages have been rejected in writing by the insured.. . . Uninsured motorist coverage or underinsured motorist coverage may be offered by an insurer in an amount exceeding the limits of liability specified in the bodily injury and property damage liability provisions of the insured’s policy. 

Ind. Code §27-7-5-2(a) (1998).   Although the statute specifies that its provisions apply to “automobile liability or motor vehicle liability polic[ies] of insurance,” it does not define these terms.
(footnote: 6)  As a result, we must ascertain whether the statute contemplates the inclusion of umbrella liability policies in its purview, thereby requiring such policies that cover excess third party automobile claims also to provide uninsured and underinsured motorist coverage. 

I

A

 

Ind.Code § 27-7-5-2(a) mandates that insurers provide uninsured/underinsured motorist coverage “in each automobile liability or motor vehicle liability policy . . .  insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle . . . .”  United National contends that its umbrella policy is not an “automobile liability policy” as envisioned in Ind.Code § 27-7-5-2.  United National urges this court to adopt its view that “[u]mbrella coverage is only meant to protect the insured against claims from third parties from catastrophic loss and is fundamentally different from an automobile or motor vehicle liability policy.” (Plaintiff’s Br. at 17).  United National predicates much of this distinction on the assertion that umbrella policies combine more than one type of liability insurance in a single policy, serving as comprehensive excess insurance that “insur[es] the policy holder in general rather than a particular automobile within the state.” (Plaintiff’s Br. at 6)  Finding that the holder of such comprehensive excess insurance receives the protection of Indiana’s uninsured/underinsured motorist statute, United National argues, goes beyond the intent of the legislature. 

In support of these arguments, United National cites decisions from several jurisdictions interpreting the scope of their respective uninsured/underinsured motorist statutes.  Among them, United National directs us to a decision of the Connecticut Supreme Court which held:

We are persuaded that excess or umbrella policies . . . serve a purpose distinct from that served by policies that exclusively cover liability from damages arising out of the ownership, maintenance or operation of an automobile.  While the [insured’s] personal excess policy provides, among other coverages, coverage for automobile liability, this does convert it into an “automobile liability policy” within the meaning of  § 38-175c.  Rather, the language of the personal excess policy indicates that it was intended as “excess insurance designed solely to protect [the insured] from the infrequent occurrence of catastrophic judgements against [them].”

Mass v. U.S. Fidelity and Guaranty Co.
, 610 A.2d 1185, 1191 (Conn. 1992) (citation omitted). 

To accept United National’s position requires this Court to look beyond the plain language of the statute, interpret its provisions, and ultimately find that the Legislature intended to exclude umbrella policies from Indiana’s uninsured/underinsured motorist law.  Although the Legislature has not defined “automobile liability or motor vehicle liability policy,” it has clearly outlined the type of coverage that triggers the statute’s application. The fact that an umbrella policy depends on a primary policy or that the policy covers other types of losses does not negate this.  What is dispositive is whether the policy provides coverage for loss resulting from liability to third parties for bodily injury, death or property damage arising from the ownership, maintenance or use of a motor vehicle.  We see nothing in the statute suggesting that a policy which provides such coverage should escape the reach of the statute merely because it depends on a primary policy or covers additional types of liability.

B

In interpreting the intended scope of Indiana’s uninsured/underinsured motorist statute, we are well served if we keep in mind the objectives of uninsured/underinsured motorist legislation generally.  As explained by one court, 

“[u]ninsured motorists coverage” is designed to close the gaps inherent in motor vehicle financial responsibility and compulsory insurance legislation, and this insurance coverage is intended, within fixed limits, to provide financial recompense to innocent persons who receive injuries and the dependents of those who are killed, through the wrongful conduct of motorists who, because they are uninsured and not financially responsible, cannot be made to respond in damages. 

Wright v. Fidelity and Casualty Co. of New York
, 155 S.E.2d 100, 106 (N.C. 1967).  Similarly, underinsured motorist coverage is designed to provide individuals indemnification in the event negligent motorists are not adequately insured for damages that result from motor vehicle accidents, and has generally been integrated into a given state’s uninsured motorist legislation by modifying the definition of an “uninsured motorist.”  
See
 
generally
 Alan I. Widiss, 
Uninsured & Underinsured Motorist Coverage
 (2nd ed., vol. 3, §32.1, 1995).  Together, these coverages serve to promote the recovery of damages for innocent victims of auto accidents with uninsured or underinsured motorists. Given the remedial nature of these objectives, uninsured/underinsured motorist legislation is to be liberally construed.  
United Farm Bureau Mutual Ins. Co.  v. Runnells
, 328 N.E.2d 1015, 1017 (Ind. Ct. App. 1978) (citation omitted).  Moreover, like all statutes relating to insurance or insurance policies, uninsured/underinsured motorist statutes are to be read in a light most favorable to the insured.  
Canon v. American Underwriters
, Inc., 275 N.E.2d 567, 569 (Ind. 1971); 
United Farm Bureau Mutual Ins. Co
., 328 N.E.2d at 1017. 

Indiana Code § 27-7-5-2 is a mandatory coverage, full-recovery, remedial statute.    It is directed at insurers operating within Indiana and its provisions are to be “considered a part of every automobile liability policy the same as if written therein.”  
Indiana Insurance Company v. Noble
, 265 N.E.2d 419, 425 (Ind. Ct. App. 1970) (citations omitted); 
accord
 
Patton v. Safeco Ins. Co. of America
, 267 N.E.2d 859, 863 (Ind. Ct. App. 1971).  Moreover, “[e]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law.” 
Indiana Ins. Co.
, 265 N.E.2d at 425.  Presently, the statute requires insurers to provide uninsured and underinsured motorist coverage “in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured’s policy, unless such coverages have been rejected in writing by the insured.” Ind. Code § 27-7-5-2 (a)(2).  However, this has not always been the case and we find the evolution of the statute instructive.  A fundamental rule of statutory construction is that an amendment changing a prior statute indicates a legislative intention that the meaning of the statute has changed.  Such an amendment raises the presumption that the legislature intended to change the law unless it clearly appears that the amendment was passed in order to express the original intent more clearly.  
Bennett v. Ind. Life and Health Ins
., 688 N.E.2d 171, 179 (Ind. Ct. App. 1997); 
see
 
also
 
New York Cent. R. Co. v. Johnson
, 127 N.E.2d 603, 234 Ind. 457 (Ind. 1955) (statutory amendment which changes language of prior statute indicates a legislative intention that the meaning of the statute has been changed). 

As originally enacted,
(footnote: 7) Indiana’s “Uninsured Motorist Statute” mandated that insurance carriers offer uninsured motorist coverage in an amount equal to Indiana’s minimum financial responsibility requirements.
(footnote: 8)  In 1982, the Legislature replaced the statute with Ind. Code § 27-7-5-2 requiring that insurers not merely 
offer
 but 
provide
 uninsured motorist coverage in an amount equal to the minimum financial responsibility requirements (but not exceeding the bodily injury and property damage limits) of the insured’s policy.
(footnote: 9)   We held that the purpose of this version of Ind. Code § 27-7-5-2 was to put injured parties in the same position they would have been had the tortfeasor complied with our financial responsibility law.  
City of Gary v. Allstate Ins. Co
., 612 N.E.2d 115, 117 (Ind. 1993) (construing Ind. Code § 27-7-5-2 as in effect on December 9, 1986).  

In 1987, the Legislature broadened the scope of the statute by requiring insurers to provide underinsured motorist coverage in addition to uninsured motorist coverage.
(footnote: 10) This amendment also mandated that insurers provide coverage in limits equal to the limits of liability specified in the bodily injury and property damage provisions of an insured’s policy.  Insureds were also allowed to purchase coverage in excess of those limits, transforming the act a into “full recovery” statute.
(footnote: 11)  This development is critical: no longer did the statute limit recovery to the bodily injury and property damage limits of the insured’s policy as had been the case when we construed the statute’s meaning in 
City of Gary
.  

United National relies on 
Marshall v. Universal Underwriters
, 673 N.E.2d 513 (Ind. Ct. App. 1996), and  
Hastings Mutual Ins. Co. v. Webb
, 659 N.E.2d 1049 (Ind. Ct. App. 1995) — both of which reflect our holding in 
City of Gary
 — for the proposition that the purpose of Indiana’s uninsured/underinsured motorist statute is to provide coverage “only to the extent of the financial responsibility law.”  (Br. of Plaintiff at 10).  United National argues that requiring primary automobile liability policies to provide uninsured and underinsured motorist coverage fully achieves this purpose, thereby removing any need for umbrella policies to provide such coverage.  We disagree. 

Although the interpretation articulated in  
City of Gary
 accurately represents the purpose of Ind. Code § 27-7-5-2 as then in effect, the language of the statute has changed and the resultant modifications evince a modified legislative intent.  To the extent that decisions of the Court of Appeals fail to make this distinction, they are disapproved and United National’s reliance upon them is misplaced.

In the years since its inception, Indiana’s uninsured/underinsured motorist statute has undergone significant modification.  It began requiring insurers to offer uninsured and underinsured coverage.  It later mandated insurers to provide this coverage. And, central to our inquiry, the law has moved from imposing limits on such coverage to allowing full recovery.  We find that this history of expanding the availability of uninsured and underinsured motorist coverage manifests an intent by our legislature to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists.  To hold that an umbrella policy which by its terms covers risks above those insured in an underlying automobile policy does not apply to the underlying uninsured or underinsured motorist coverage would contravene that intent. 

II

Indiana is not the first state called upon to determine whether its uninsured/underinsured motorist provisions are applicable to umbrella liability policies.     As in Indiana, the outcomes of similar inquiries elsewhere frequently turn on the language of the relevant statute.  Courts addressing the issue have often discerned two types of uninsured motorist statutes: “minimum liability” and “full recovery.” 
(footnote: 12)  In states with minimum liability statutes — mandating that insurers provide uninsured and underinsured coverage at minimum levels, usually the amount required by a state’s financial responsibility law —  courts have typically found that the relevant statutes do not require that umbrella policies provide uninsured and underinsured coverage.
(footnote: 13)  The same is true of several minimum liability jurisdictions where the relevant statutes provide methods to increase the statutory minimum.
(footnote: 14)  Some courts reason that because the legislative purpose of these statutes is satisfied when policies compensate the victim to the same extent as they would have been had the tortfeasor had complied with the minimum requirements of  the state’s financial responsibility laws, application of the statute to underlying policies is sufficient. 
See
 
Hartbarger v. County Mutual Ins. Co.
, 437 N.E.2d 691 (Ill. App. 1982).  Other courts rely on what they find to be the fundamental difference between umbrella liability policies and automobile liability policies.  
See
 
Rowe v. Travelers Indemnity Co.
, 800 P.2d 157 (Mont. 1990).  

However, we conclude that the language of the Indiana statute, which allows for a full recovery by insureds, compels a contrary inference to that drawn by courts in jurisdictions with minimum recovery statutes.  We are not alone in this view, as many jurisdictions with “full recovery” statutes similar to our own have adopted the view that umbrella policies are subject to the requirements of uninsured/underinsured motorist laws.
(footnote: 15)  

For instance, in 
Cincinnati Ins. Co. v. Siemens
, 474 N.E.2d 655 (Ohio App. 1984), the court found that excess or umbrella liability policies that provide automobile liability coverage are required to provide uninsured motorist coverage pursuant to Ohio’s uninsured motorist statute.
(footnote: 16)  In reaching this conclusion, the court considered the language of Ohio’s uninsured motorist statute, which  requires coverage from policies that insure against liability “arising out of the ownership, maintenance, or use of a motor vehicle” and found that umbrella policies that did such were themselves automobile liability policies.  
Id
. at 657.  As to arguments that umbrella policies were inherently different from automobile liability policies — designed to insure against catastrophic loss exceeding the coverage of underlying policies — the court found this to be a “distinction without a difference.”  
Id
. at 657.  Ohio’s Supreme Court later approved this holding in 
Duriak v. Globe American Casualty Co.
, 502 N.E.2d 620, 623 (Ohio 1986). 

In 
Bartee v. R.T.C. Transp., Inc.
, 781 P.2d 1084 (Kan. 1989),
(footnote: 17) the Kansas Supreme Court found that the Kansas uninsured motorist statute required that a personal liability umbrella policy which required an underlying primary automobile liability policy, must include uninsured motorist coverage even though such coverage was not expressly provided.
(footnote: 18) 
Id
. at 1095.  Again, the court noted that originally the statute had provided a minimum level of recovery, but subsequent amendments removing the limits on recovery showed the intent of the Kansas legislature to allow for full recovery.  
Id
. at 1094.  In reaching this conclusion, the court cited approvingly an unreported federal district court decision:

“The whole purpose behind umbrella coverage is to assure that adequate coverage exists, i.e., that umbrella coverage picks up where the underlying policy leaves off . . . This court fails to see how  UM [uninsured motorist] coverage could exist under the underlying policy but not under the umbrella policy . . .  As part of the underlying policy, it is part of the umbrella policy because the umbrella policy specifically identifies the underlying policy.  In addition the umbrella policy professes to continue as underlying insurance at the exhaustion of coverage in the underlying policy.”

 
Id
. at 1094 (citing 
Smith v. Ruiz
, No. 83-6018-K (D. Kan. Sept. 19, 1984)).

 We find the reasoning of these decisions consonant with our analysis of the language of the Indiana statute.  And while at least three full recovery jurisdictions have found that their uninsured/underinsured motorist statutes do not apply to umbrella policies, those cases have rested upon a perceived uniqueness of umbrella policies that remove them from the realm of automobile liability insurance.
(footnote: 19)  As we have stated in part I-A, 
supra
, we find that distinction to be of less consequence than the coverage actually provided by the policy.  The Indiana legislature clearly did not intend to limit the amount of uninsured and underinsured motorist protection available to consumers, and, in fact, has required that purchased coverage at least equals overall automobile liability limits.  Absent an express directive from our legislature, we decline the invitation to carve out an exemption for particular policies.  

We think it highly likely that many consumers choose to purchase umbrella coverage because they are not satisfied that the limits of their primary automobile liability coverage is sufficient protection against the many perils of driving.  We also think it is reasonable for those consumers to expect to be able call upon those umbrella policies to supplement their coverage when those perils involve uninsured and underinsured motorists.  We find that Indiana’s uninsured/underinsured motorist statute mandates that the umbrella carrier answer that call.

III

Several months after we notified the federal district court that we would answer its certified question in this case, the Seventh Circuit Court of Appeals rendered an opinion on the same question of Indiana law in another case.  In 
Schmitt v. American Family Mutual Insurance Company
, 161 F.3d 1115 (7th Cir. 1998), the court heard an appeal from the U.S. District Court for the Southern District of Indiana in which the plaintiff, Randall Schmitt, sought indemnity for losses stemming from an automobile collision. After collecting the policy limits of the tortfeasor’s auto insurance carrier, the plaintiff turned to the issuer of his own umbrella policy, demanding indemnity for losses exceeding those limits on the basis that his umbrella policy was obligated by law to offer uninsured and underinsured motorist coverage.  The district court held that Indiana does not treat an umbrella policy as a “motor vehicle policy” for purposes Ind. Code § 27-7-5-2 and entered summary judgment for the umbrella insurance carrier.  

In affirming the trial court’s judgment that plaintiff’s umbrella policy did not include uninsured and underinsured motorist coverage, the Seventh Circuit concluded:

“Because IC sec. 27-7-5-2 does not define ‘motor vehicle liability policy’, and because that term can be read without violence to the language as limited to primary policies of auto insurance, our best estimate is that Indiana would follow the majority of other states and treat secondary insurance policies as outside the ambit of IC sec. 27-7-5-2.” 

 
Id
. at 1117.  As should be clear from the foregoing discussion, we reach the opposite conclusion.
(footnote: 20)

 Most of the Seventh Circuit’s analysis is devoted to a review of other states’ courts’ examination of this issue.  To the extent the circuit court focuses on Ind. Code § 27-7-5-2 itself, the court draws a conclusion as to what it believes the legislature must 
not
 have intended in imposing a statutory requirement for uninsured and underinsured motorist coverage.  This is, of course, the same “perceived uniqueness of umbrella policies that removes them from the realm of automobile liability insurance” that we discussed in part II, 
supra
.   We reiterate that to the extent an umbrella policy provides coverage for loss resulting from liability to third parties for bodily injury, death or property damage arising from the ownership, maintenance or use of a motor vehicle, it should not escape the reach of the statute simply because it covers additional types of liability as well.

With all due respect, we believe that the result in 
Schmitt
 does not represent the majority rule in “full recovery” statute jurisdictions.  Because each of the cases cited poses a question of statutory interpretation, the language of the statute being interpreted is critical to the result.  We have identified in footnote 15, 
supra
, eight states in which the courts have read their full recovery statutes the same way we read ours.
(footnote: 21)  And while the court in 
Schmitt
 says that “[c]ourts of seven states with laws essentially identical to Indiana’s have concluded that an umbrella policy need not include underinsured motorist coverage”, 
Schmitt
, at 1116, three of those decisions interpret “minimum recovery” statutes unlike Indiana’s full recovery measure.  
O’Hanlon v. Hartford Accident & Indemnity Co
., 639 F.2d 1019 (3d Cir. 1981) (Delaware law);  
Stoumen v. Public Service Mut. Ins. Co
., 834 F.Supp. 140 (E.D.Pa. 1993);  
MacKenzie v. Empire Ins. Co
., 782 P.2d 1063 (Wash. 1989).  Another interprets a statute that requires insurers merely to offer the coverage, as opposed to mandating insurers provide such coverage, as is the case in Indiana.  
Todd v. Federated Mutual Insurance Co
., 409 S.E.2d 361 (S.C. 1991).  

Conclusion
   

Indiana Code § 27-7-5-2 provides broad protection to insureds injured in accidents with financially irresponsible motorists. Consistent with this construction, and for the foregoing reasons we conclude that — absent an explicit statutory exemption to the contrary — an umbrella liability policy that does not provide for uninsured/underinsured motorist coverage by its own terms, yet provides coverage for liability arising from the ownership maintenance or use of motor vehicles, is an “automobile liability policy or motor vehicle liability policy” within the meaning of Indiana Code 27-7-5-2(a).  As such, the statute requires such a policy to provide uninsured and underinsured motorist coverage.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur. 
  

FOOTNOTES
1:
Pursuant to Ind.Appellate Rule 15(O), the following question was certified to us by the Honorable Rudy Lozano, Judge, United States District Court for the Northern District of Indiana: “Is an umbrella liability policy that does not provide for uninsured/underinsured motorist coverage by its own terms an ‘automobile liability policy or motor vehicle liability policy’ within the meaning of Indiana Code 27-7-5-2(A)?”

2:
In Part I of the Insuring Agreements contained in the “Commercial Umbrella Liability Policy,” United National agrees to “pay on behalf of the insured the ultimate net loss in excess of the applicable underlying (or retained) limit hereinafter stated, which the insured shall become obligated to pay by reason of the liability imposed upon the insured by law or assumed by the insured under contract . . .”  

3:
Schedule A of United National’s “Commercial Umbrella Liability Policy” lists Liberty Mutual’s Auto Policy as one of three applicable underlying policies upon which its liability coverage was based.

4:
Defendant argues that the umbrella policy does indeed provide for underinsured motorist coverage by its own terms, and has expressed its intent to appeal the District Court’s ruling to the contrary. 

5:
Ind. Code§ 9-25-4-5 prescribes the minimum amounts of financial responsibility required for bodily injury or death and for damage to, or the destruction of, property.

6:
We note that although the term “motor vehicle liability policy” is not defined in Title 27 of the Indiana Code governing insurance, it is defined in Title 9 governing motor vehicles.  Ind. Code § 9-13-2-106 reads:

“Motor vehicle liability policy” means an owner’s policy of liability insurance or an operator’s policy of liability insurance that:

(1) is issued, except as provided in IC 9-25-5-10, by an insurance carrier duly authorized to transact business in Indiana to or for the benefit of the person named in the policy as insured; and

(2) insures against liability resulting from the ownership, maintenance, use or operation of a motor vehicle.

  

The Legislature has not signified its intention that “motor vehicle liability policy” have the same meaning in Ind. Code § 27-7-5-2 as it does in § 9-13-2-106. In any event, we find nothing in the foregoing definition that would exclude umbrella liability policies meeting this criteria. 

7: Ind. Code § 27-7-5-1(originally enacted as Acts 1965, c. 138, s. 1)

8: Indiana’s Financial Responsibility Act compels motorists to make provisions for the protection of other drivers on the road in order that persons who suffer loss due to the tragedy of auto accidents shall have a source and means of recovery.  
Federal Kemper Ins. Co.  v.  Brown
, 674 N.E.2d 1030, 1035 (Ind. Ct. App. 1997).  As part of the Act, Indiana Code § 9-25-4-5 outlines the minimum amounts of financial responsibility required for persons who register or operate motor vehicles on Indiana roads, streets or highways.   

9:
Acts 1982, P.L. 166, SEC. 1. 

10:
P.L. 391-1987, Sec. 1, eff. Jan. 1, 1988.

11:
As further evidence of its intent to provide the opportunity for “full recovery” for victims of auto accidents with uninsured or underinsured drivers, the
 
Legislature again amended the statute in 1994, providing, 
inter
 
alia
, that coverage be provided in limits 
at least
 equal to the limits of liability specified in the bodily injury liability provisions of an insured’s policy.  P.L. 130-1994, Sec. 41, eff. Jan. 1, 1995 and P.L. 116-1994, Sec. 56 eff. Jan. 1, 1995.
 

12:
As we have noted 
supra
, Ind. Code § 27-7-5-2 is a full recovery statute. 

13:
See
 
Trinity Universal Ins. Co. v Metzger
, 360 So.2d 960 (Ala. 1978); 
Cincinnati Ins. Co. v. Miller
, 546 N.E.2d 700 (Ill. App. 1989); 
Archunde v. Inter. Surplus Lines Ins.
, 905 P.2d 1128 (N.M. 1995); 
Continental Ins. Co. v. Howe
, 488 So.2d 917 (Fla. App. 1986)(applying Rhode Island Law); 
MacKenzie v. Empire Insurance Co.
, 782 P.2d 1063 (Wash. 1989). 

14:
See
 
O’Hanlon v. Hartford Accident & Indemnity Co
.,  639 F.2d 1019 (3d Cir. 1981)(Delaware law); 
Popham v. State Farm Ins., Co.
, 634 A.2d 28 (Md. 1993); 
Stiefel v. Bayly, Martin & Fay, Inc.
, 577 A.2d 1303 (NJ 1990); 
Matarasso v. Continental Casualty Co.
, 440 N.Y.Supp.2d 40 (1981); 
Moser v. Liberty Mutual Insurance Co.
, 731 P.2d 406 (Okla. 1986). 

15: 
See
 
Ormsbee v. Allstate Ins. Co.
, 859 P.2d 732 (Ariz. 1993); 
Aetna Casualty & Surety Co. v. Green
, 372 So.2d 65 (Fla. App. D1 1976);  
St. Paul Fire & Marine Ins. Co. v. Goza
, 224 S.E.2d 429 (Ga. App. 1976); 
Bartee v. R.T.C. Transp., Inc.
, 781 P.2d 1084 (Kan. 1989); 
Southern American Ins. Co. v. Dobson
, 441 So.2d 1185 (La. 1983);  
Estate of Delmue v. Allstate Ins. Co.
, 936 P.2d 326 (Nev. 1997); 
Isenhour v. Universal Underwriters Ins. Co
., 461 S.E.2d 317 (N.C. 1995). 
Cincinnati Ins. Co. v. Siemens
, 474 N.E.2d 655 (Ohio. App. 1984);  
American Economy Insurance Co. v. Canamore
, 834 P.2d 542 (Or.App. 1992).  We note that the legislatures of  Arizona, Florida and Kansas have subsequently amended their relevant statutes to exclude umbrella policies from uninsured and underinsured motorist coverage requirements. Ariz.Rev.Stat. sec.20-259.01; Fla. Stat. sec.627.727(2); Kan. Stat. sec.40-284(a). 

16:
Ohio’s uninsured motorist statute provides:

“(A) No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in the state unless an equivalent amount of coverage for bodily injury or death is provided therein or supplemental thereto . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners of operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom.  The named insured shall have the right to reject such uninsured motorist coverage . . .”  R.C. 3937.18 (1982). 

17:
The Kansas uninsured motorist statute provided:

“(a) No automobile liability insurance policy covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in the state, unless the policy contains or has endorsed thereon, a provision with coverage limits equal to the limits of liability coverage for bodily injury or death in such automobile liability insurance policy sold to the named insured for payment of part or all sums which the insured or the insured’s legal representative shall be legally entitled to recover . . .”  K.S.A.1988 Supp. 40-284.

18:
While the Kansas legislature has subsequently amended its statute to preclude uninsured and underinsured motorist coverage in umbrella policies, we find the court’s discussion of the version at issue in 
Bartee
 useful in considering the reach of our own uninsured motorist statute.  
See
 footnote 15, 
supra
. 

19:
See
 
Stoumen v. Public Service Mut. Ins. Co
., 834 F.Supp. 140 (E.D.Pa. 1993)(holding that umbrella policies are fundamentally distinct from automobile insurance policies for purposes of Pennsylvania’s underinsured motorist statute);  
Cohn v. Pacific Employers Insurance Co.
, 569 A.d. 544 (Conn. 1990)(holding that relevant statute intended to apply only to those policies that extended underlying coverage before the operation of any indemnity policy that might otherwise exist); 
United Services Auto. Assn. v. Wilkinson
, 569 A.2d 749 (N.H. 1989)(holding that umbrella policies are intended to provide broad coverage for catastrophic loss over and above any type of primary coverage and therefore outside the sphere of automobile liability insurance contemplated by relevant statute).

20:
The district and circuit courts also held that this issue need not have been certified to our court.  
Schmitt
, at 1117.  We express no disagreement with this conclusion.

21:
Schmitt
 identifies three of these states (also noted in footnote 15, 
supra
) which created statutory exemptions from providing uninsured/underinsured coverage in umbrella policies after the courts of those states found coverage required by full recovery statutes.