Randall L. SCHMITT, Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.

No. EV 96–128–C H/H.

United States District Court, S.D. Indiana, Evansville Division.

June 10, 1999.

---

Daniel J. Tuley, Robert John & Associates, Evansville, IN, for plaintiff.

Brent R. Weil, Kightlinger & Gray, Evansville, IN, for defendant.

Samuel A. Day, New Albany, IN.

Jeffrey A. Doty, Kightlinger & Gray, Indianapolis, IN, for defendant.

## ENTRY ON PLAINTIFF'S MOTION FOR RELIEF FROM JUDGMENT

HAMILTON, District Judge.

The issue is whether this court should now vacate a judgment in a diversity case after the Supreme Court of Indiana decided the controlling issue of state law contrary to the decisions of this court and the Seventh Circuit. The timing of the state court's decision enabled the losing party in this federal case to seek relief from judgment after the judgment had been affirmed on appeal but before his time to file a petition for a writ of certiorari had expired.

A later change in state law is rarely if ever a sufficient basis alone for vacating a truly final judgment in a federal lawsuit. As explained below, however, the controlling state law changed, and plaintiff Randall Schmitt sought relief from this judgment, before the judgment in this case became truly final, when it was still subject to further direct review. Because of that timing, the prevailing defendant's interest in the finality of the judgment is minimal. In addition, the record here shows that plaintiff Schmitt took every step he could to appeal the judgment and to obtain a decision from the Supreme Court of Indiana on the controlling question of state law. In light of these circumstances, the court concludes that it should exercise its discretion under Rule 60(b)(6) of the Federal Rules of Civil Procedure to vacate the judgment and to proceed with the case under the controlling law as announced by the Supreme Court of Indiana before the federal judgment became truly final.

### Procedural Background

Plaintiff Randall L. Schmitt suffered serious injuries in an automobile accident in 1994. On June 25, 1996, he filed this diversity action seeking a declaratory judgment that he is entitled to underinsured motorist coverage under his umbrella liability insurance policy issued by defendant American Family Mutual Insurance Company. When Schmitt filed the case, the Indiana courts had not decided whether the policy limits of a driver's umbrella liability insurance policy could be counted to determine whether another driver was "underinsured" for purposes of Indiana law. See generally Ind. Code § 27-7-5-2. Defendant American Family moved for summary judgment. Plaintiff Schmitt opposed the motion for summary judgment, and on July 8, 1997, Schmitt filed a motion asking this court to certify the controlling question of Indiana law to the Supreme Court of Indiana. Defendant later indicated that it did not object to certification.

On January 13, 1998, however, this court denied plaintiff Schmitt's motion for certification and granted defendant's motion for summary judgment. Acting pursuant to *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and making a prediction of Indiana law, this court concluded that the Indiana courts would probably hold that Indiana insurance statutes governing uninsured and underinsured motorist coverage do not apply to umbrella liability insurance policies. Under that reasoning, Schmitt was not entitled to a declaratory judgment that he could collect underinsured motorist benefits based upon his umbrella liability policy from American Family.

Schmitt appealed this court's decision to the United States Court of Appeals for the Seventh Circuit. On March 17, 1998, Schmitt filed with the Seventh Circuit a motion to certify the controlling question of Indiana law to the Supreme Court of Indiana. On December 3, 1998, the Seventh Circuit denied plaintiff's request for certification to the Supreme Court of Indiana and affirmed this court's decision. *Schmitt v. American Family Mutual Insurance Co.*, 161 F.3d 1115 (7th Cir.1998). On January 5, 1999, the Seventh Circuit issued its mandate affirming the dismissal of Schmitt's claims with prejudice.

■ On February 3, 1999, however, in an unrelated case, the Supreme Court of Indiana decided the same controlling question of Indiana law contrary to this court's and the Seventh Circuit's predictions and holdings. In *United National Insurance Co. v. DePrizio*, 705 N.E.2d 455 (Ind.1999), the state court held that an umbrella liability policy is a "motor vehicle liability policy" for purposes of the uninsured and underinsured motorist provisions of Ind.Code § 27–7–5–2. Coincidentally, the state court decided *DePrizio* on a certification of the same question of Indiana law by Judge Lozano of the Northern District of Indiana. On February 16, 1999, plaintiff moved for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, arguing that the Indiana court's decision in *DePrizio* presented extraordinary circumstances warranting relief from judgment. This court has jurisdiction to consider such a request without leave of the Seventh Circuit. See *Standard Oil Co. v. United States*, 429 U.S. 17, 18, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976) (per curiam); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1270 (2d Cir.1994).

### Discussion

■ Rule 60(b) of the Federal Rules of Civil Procedure authorizes relief from a court's judgment or order based on a variety of grounds, including mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud or misconduct by the opposing party, lack of jurisdiction of the issuing court, or prior satisfaction or release of the

judgment. Rule 60(b)(6) adds a residual category authorizing relief for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6) may be used to order relief from judgment only where "extraordinary circumstances" exist or where the judgment may cause "extreme and undue hardship." See, *e.g.*, *DeWeerth v. Baldinger*, 38 F.3d at 1272 (denying relief from three-year-old judgment after state court clarified controlling state law); see also *Cincinnati Insurance Co. v. Flanders Electric Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir.1997) (noting that Rule 60(b) relief is warranted "only in exceptional circumstances," and affirming denial of relief from judgment that became final 18 months before Indiana state court clarified controlling state law).

■ Generally, a change in state decisional law is insufficient by itself to constitute an extraordinary circumstance warranting Rule 60(b) relief. See, *e.g.*, *Cincinnati Insurance*, 131 F.3d at 628; *DeWeerth v. Baldinger*, 38 F.3d at 1272–73. This general rule stems from the interest in the finality of judgments in diversity cases: "Rule 60(b) sets a 'higher value on the social interest in the finality of litigation.'" *Cincinnati Insurance*, 131 F.3d at 628, quoting *Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673, 682 (7th Cir.1983).

■ Since 1938, the Supreme Court's decision in *Erie Railroad Co. v. Tompkins* has required federal courts to apply and interpret substantive state law in diversity cases. The *Erie* doctrine assumes there will be times the federal courts will incorrectly predict what the state courts would decide. American Family is therefore correct in noting that a state court's later disagreement with a federal court's interpretation of state law is generally not enough to reopen a diversity case.

The Second Circuit has explained this need for finality:

The very nature of diversity jurisdiction leaves open the possibility that a state court will subsequently disagree with a federal court's interpretation of state law. However, this aspect of our dual justice system does not mean that all diversity

judgments are subject to revision once a state court later addresses the litigated issues. Such a rule would be tantamount to holding that the doctrine of finality does not apply to diversity judgments, a theory that has no basis in *Erie* or its progeny.

* * *

■ There is nothing in *Erie* that suggests that consistency must be achieved at the expense of finality, or that federal cases finally disposed of must be revisited anytime an unrelated state case clarifies the applicable rules of law. Attempting to obtain such a result through Rule 60(b)(6) is simply an improvident course that would encourage countless attacks on federal judgments long since closed. *DeWeerth v. Baldinger*, 38 F.3d at 1273–74; see also *Cincinnati Insurance*, 131 F.3d at 629, quoting *DeWeerth* ; *Norgaard v. DePuy Orthopaedics, Inc.*, 121 F.3d 1074, 1076 (7th Cir.1997) ("Decisions constantly are being made by judges which, if reassessed in light of *later* precedent, might have been made differently; but a final judgment normally ends the quarrel. Indeed, the common law could not safely develop if the latest evolution in doctrine became the standard for measuring previously resolved claims. The finality of judgments protects against this kind of retroactive lawmaking."), quoting *Biggins v. Hazen Paper Co.*, 111 F.3d 205, 212 (1st Cir.1997) (footnote omitted; emphasis in original). Given the importance of finality, granting relief from judgment in diversity cases remains a rare exception. One example of exceptional circumstances exists when a federal court and a state court reach divergent results in actions arising from the same transaction or occurrence. See *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir.1975). This case presents another of those rare exceptions, primarily because, when plaintiff sought relief, the federal judgment was not truly final in the sense of being immune from further direct review and possible reversal.

A. *The Judgment Was Still Subject to Further Direct Review and Thus Was Not Truly Final.*

■ The most compelling factor in favor of granting Schmitt's motion for relief from judgment is the timing in this case. That timing is also the primary factor that distinguishes this case from *DeWeerth* and *Cincinnati Insurance*, the cases on which American Family relies most heavily.

In *DeWeerth* the Second Circuit reversed a district court's decision that had set aside a judgment based on an intervening decision by the highest state court on a controlling question of state law. The critical point for purposes of this case is that the judgment in *DeWeerth* had become final three years before the state court issued its decision. See 38 F.3d at 1269–70. The Second Circuit explained: "In our view, *Erie* simply does not stand for the proposition that a plaintiff is entitled to reopen a federal court case that has been closed for several years in order to gain the benefit of a newly-announced decision of a state court." *Id.* at 1272.

In *Cincinnati Insurance*, an appeal had been pending in the Seventh Circuit on a question of insurance coverage for pollution under Indiana law. After the case had been argued in the Seventh Circuit, the Supreme Court of Indiana agreed to hear an appeal involving similar issues. The appellant then filed with the Seventh Circuit a motion for stay of proceedings. The Seventh Circuit denied that motion and affirmed the district court's decision. Nearly 18 months later, the Supreme Court of Indiana issued the decision in its case and came to the opposite conclusion on the controlling issue of state law. The appellant then filed a motion for relief from judgment in the federal district court. The district court denied the appellant's motion and the Seventh Circuit affirmed the denial. 131 F.3d at 627–28, 631.

The timing also serves to distinguish *McGeshick v. Choucair*, 72 F.3d 62 (7th Cir. 1995), in which the Seventh Circuit denied a motion to recall a mandate, which, like a motion in the district court under Rule 60(b)(6), also requires a showing of "exceptional circumstances." In *McGeshick*, the Supreme Court of Wisconsin decided a key issue of state law about 18 months after the Seventh Circuit had reached a different conclusion. Relying on *DeWeerth* and the finali-

ty of the earlier judgment, the Seventh Circuit refused to reopen the judgment.

All the cases cited by American Family involved efforts to reopen judgments that were no longer subject to further direct appeal or other review. The judgments in those cases had become truly final long before the efforts to reopen them, so that the prevailing parties and courts had substantial interests in the finality of those judgments. In this case, however, the Supreme Court of Indiana issued its decision in *DePrizio* only 62 days after the Seventh Circuit affirmed summary judgment for the defendant. Schmitt moved for relief from judgment only 13 days later. As a result, American Family's and the courts' interest in finality here is minimal to nonexistent. When Schmitt filed his motion under Rule 60(b)(6), the judgment in this case was still subject to further direct review. Schmitt still had time to file a petition for writ of certiorari in the Supreme Court of the United States. See Supreme Court Rule 13 (petition must be filed within 90 days after entry of judgment).

In fact, the Second Circuit itself has distinguished *DeWeerth* on very similar grounds. In *Sargent v. Columbia Forest Products, Inc.*, 75 F.3d 86 (2d Cir.1996), the Second Circuit had summarily affirmed the dismissal of certain state law claims in an unpublished order. The appellant filed a petition for a writ of certiorari. Immediately after that filing, the state supreme court issued a decision recognizing the right of action that the Second Circuit had rejected. The Supreme Court of the United States denied the petition, and within three weeks, the appellant asked the Second Circuit to recall its mandate. 75 F.3d at 89.

The Second Circuit applied the "exceptional circumstances test" and recognized the importance of finality even in cases where federal courts incorrectly predicted state law. *Id.* at 89–90. The Second Circuit nevertheless granted the relief primarily based on the appellant's efforts to apprise the Second Circuit of the state court's consideration of the same issue, as well as the fact that a petition for a writ of certiorari had been pending when the state court ruled:

> [T]here was not a substantial lapse of time between issuance of our mandate and the present motion. When *Murray [v. St. Michael's College*, 164 Vt. 205, 667 A.2d 294 (Vt.1995)] was decided, a petition for a writ of certiorari was pending in the Supreme Court, and the motion to recall the mandate was filed within two weeks of the denial of the petition for certiorari. *Cf. DeWeerth*, 38 F.3d at 1269–70 (district court relief under Rule 60(b) reversed, and recall of mandate by court of appeals denied, where New York Court of Appeals decision on which motion rested was decided three years after denial of certiorari by United States Supreme Court). Recall of the mandate would thus not reopen a stale claim.

75 F.3d at 90.

American Family argues that Schmitt had a statistically "low chance of relief" from the Supreme Court of the United States. That may be true, but even long odds that certiorari would be granted do not alter the fact that judgment in Schmitt's case simply had not yet become truly final, in the sense that it was no longer subject to further direct review. The time for filing a petition for writ of certiorari had not yet passed. Only after that time had passed would American Family have been justified legally in relying upon the finality of the judgment.[1]

---

1. The Supreme Court's doctrine of finality for purposes of deciding when a prisoner may take advantage of changes in applicable law in habeas corpus cases is instructive here. When seeking collateral relief through a petition for a writ of habeas corpus, a prisoner may take advantage of new rules of law announced while the conviction and sentence were still on direct review. With some important exceptions, however, such a prisoner may not take advantage of new rules of law announced after the conviction and sentence became final. See *Caspari v. Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994);

*Teague v. Lane*, 489 U.S. 288, 309–10, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). For purposes of applying the *Teague* rule, a state conviction and sentence become final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. at 390, 114 S.Ct. 948. Applying the same concept of finality here, Schmitt is relying on a change in the law that occurred before the adverse judgment had be-

### B. Schmitt's Efforts to Obtain Further Review and a Decision from the Indiana Courts

■ The other factor that supports relief from judgment in this case is the effort that Schmitt made to appeal this court's original decision and to have the relevant question certified to the Supreme Court of Indiana. Courts consistently deny relief from judgment based on an intervening change of law when the losing party has failed to appeal or to file a petition for a writ of certiorari. See *Cincinnati Insurance*, 131 F.3d at 627 n. 1 ("Flanders did not request certification of the case to the Indiana Supreme Court. If Flanders had done so, the equities may have appeared in a different light to this Court....") (citation omitted); *Norgaard*, 121 F.3d at 1076 (denying relief from judgment filed 85 days after the district court entered judgment but no appeal was taken, and noting that Rule 60(b) "cannot be used to obtain a belated appeal...."); *Dowell v. State Farm Fire and Casualty Automobile Insurance Co.*, 993 F.2d 46, 47 (4th Cir.1993) (denying relief from judgment filed five months after the district court's decision and noting that plaintiff had failed to ask the district court to certify the issue to state court and had failed to appeal the district court's interpretation of the relevant statute); *Brown v. Clark Equipment Co.*, 96 F.R.D. 166, 173 (D.Me.1982) (denying motion for relief from judgment filed approximately eight months after the district court dismissed plaintiffs' case and stating: "Failure to appeal an adverse judgment unquestionably requires denial of relief from judgment where there is no clearly adverse rule rendering appeal futile.").

The District of Hawaii explained in *Stein v. State Farm Mutual Automobile Insurance Co.*, 934 F.Supp. 1171 (D.Hawai'i 1996), the significance of the moving party's efforts in pursuing appeal or requests for certification before being allowed to receive relief from judgment:

> In order for a motion for relief under Rule 60(b)(6) to succeed the movant must show that relief "will accomplish justice" in an "extraordinary circumstance." Normal-

ly, relief will not be granted unless the moving party is able to show both injury and that circumstances beyond its control prevented timely action to protect its interests. Consequently, courts have not granted relief where the party has made deliberate litigation choices and ignored normal legal recourse.

Here, Plaintiffs chose not to appeal the court's decision denying their Motion to Extend the Stay which resulted in dismissal of Plaintiffs' claim.... As long as an appeal is pending and the district court's judgment is not final as to all matters, courts have no difficulty in applying intervening changes in the law.

By failing to appeal in the instant case, Plaintiffs foreclosed this opportunity and allowed their case to come to a close. As stated by the Supreme Court in *Ackermann* [*v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950) ]:

> Petitioner made a considered choice not to appeal.... His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong.... There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Ackermann*, 340 U.S. at 198, 71 S.Ct. 209.

934 F.Supp. at 1173–74 (citations omitted).

In denying plaintiffs' motion for relief from judgment, the *Stein* court's focus was twofold. First, the court relied on the strong interest in finality of judgments. Where a party fails to appeal an adverse decision and files a Rule 60(b)(6) motion after the time to appeal has elapsed, the judgment has already become final. Second, the court relied on the fact that relief from judgment should be available only where the moving party was injured because of "circumstances beyond its control." In other words, the losing party must have done all that he or she could do to secure the desired outcome.

come final, before the time for filing a petition

for writ of certiorari had elapsed.

In this case Schmitt used the only procedural mechanisms available to obtain a decision by the Supreme Court of Indiana on the controlling question of state law. He asked both this court and the Seventh Circuit to certify the controlling question of state law to the Supreme Court of Indiana. He also appealed this court's decision to the Seventh Circuit, and he moved for relief from judgment only 13 days after the Supreme Court of Indiana issued *DePrizio*.

In addition, there was no practical, reliable way for Schmitt or his lawyers (or the Seventh Circuit) to have discovered that the Supreme Court of Indiana had agreed to decide the same question. Because *DePrizio* arrived in the state court by certification from a federal district court, there was no published decision by the Indiana Court of Appeals on the question, nor was there a published order granting transfer in the case. The Supreme Court of Indiana, unlike the Supreme Court of the United States, does not routinely publish such information about certified questions. Cf. *Norgaard*, 121 F.3d at 1075 (ignorance of the Supreme Court of the United States' docket is "not 'excusable'—it is nothing but negligence, which does not justify untimely action"). Although the Seventh Circuit denied Schmitt's early request for certification, this court is confident that his request to the Seventh Circuit would have appeared in a very different light if the Seventh Circuit had known that the Supreme Court of Indiana was already considering precisely the same question even before briefs had been filed in the Seventh Circuit.

American Family argues that it is irrelevant whether the Seventh Circuit would have known that the Supreme Court of Indiana had certified *DePrizio* because, in *Cincinnati Insurance*, the Seventh Circuit knew another case presenting the same issue was then pending in the Supreme Court of Indiana and the court still denied the plaintiff's motion for a stay. In *Cincinnati Insurance*, however, the appellant filed the motion for stay six months after oral argument and a little over one month before the Seventh Circuit issued its decision. See 131 F.3d at 630. The Seventh Circuit explained that the "last minute request to abate or stay the proceedings ... does not push the equities heavily in [plaintiff's] direction." *Id.* Faced with the prospect of waiting for more than a year for a decision, the Seventh Circuit issued its opinion only a month later, and the state court did not rule until nearly 18 months later.

In this case, by contrast, the Supreme Court of Indiana certified the relevant question in *DePrizio* at the earliest stages of Schmitt's appeal in the Seventh Circuit: Judge Lozano certified the question to the Supreme Court of Indiana on February 20, 1998, and the state court accepted the question March 6, 1998. Schmitt filed his notice of appeal on February 4, 1998. On March 17, 1998, he filed with the Seventh Circuit his motion to certify the same question to the state court.

American Family points out that Schmitt chose to file his lawsuit in federal court. The Seventh Circuit and this court made the same point in denying Schmitt's motions to certify the issue to the Supreme Court of Indiana. See 161 F.3d at 1117; district court slip op. at 10 n. 3. While that was a factor weighing against certification, its importance is now minimal after the Supreme Court of Indiana accepted a certified question from another district court and actually decided the issue. This court's earlier concerns about delay, duplication of effort, and possibly overloading the state court with certified questions are no longer relevant here.

## C. *Relative Hardships*

■ Schmitt's remaining time to file a petition for writ of certiorari and his efforts to appeal and to obtain a decision from the Supreme Court of Indiana are, in this court's view, sufficient reasons for this court to exercise its discretion to grant relief under Rule 60(b)(6) in this case. Nevertheless, the court has also considered the significant hardship that Schmitt will suffer if he is not relieved from judgment as compared to the minimal hardship American Family will suffer if relief is granted.

Granting relief from judgment will subject American Family to application of controlling Indiana law announced at a time when the judgment in favor of American Family was still subject to further direct review. Such

application of controlling law would not impose a relevant and cognizable hardship on American Family weighing against such relief. American Family also argues, however, that its rights might be prejudiced in other ways if the judgment is reopened. It suggests, for example, that it might be deemed to have waived its right to pursue subrogation claims. If this argument were correct, any such waiver would need to have occurred between the time the Seventh Circuit issued its mandate—January 5, 1999—and the time Schmitt filed his Rule 60(b)(6) motion—February 16, 1999. American Family has not explained how such a waiver could have occurred during that brief window of time.

The hardship that Schmitt would suffer without relief from judgment is clear: Schmitt sustained a serious brain injury that has resulted in approximately $200,000 of medical expenses, has caused him permanent injuries that will require continuing care, and has caused him to lose a "fairly substantial" amount of income from his business. He has received insurance payments thus far of approximately $125,000. Cf. *Cincinnati Insurance*, 131 F.3d at 630 (affirming denial of relief where, although plaintiff would be "somewhat disadvantaged financially" by being denied relief from judgment, plaintiff had "not made a compelling showing of such hardship and unfairness sufficient to demonstrate that the district court abused its discretion in denying it relief under Rule 60(b)(6)"). Schmitt has made such a compelling showing in this case, especially in view of the fact that the judgment was not truly final when he moved to have it set aside.

### Conclusion

For the reasons set forth above, plaintiff Schmitt's motion for relief under Rule 60(b)(6) is hereby GRANTED. The judgment dismissing this action with prejudice is hereby VACATED. Counsel shall confer and submit to the court no later than July 2, 1999, a statement as to how soon they can be prepared for trial.

So ordered.