CITY OF GARY and the City of Gary Police Department, Appellants, (Third–Party Defendants Below),

Luis Deluna, Jr., Appellant, (Plaintiff Below),

v.

ALLSTATE INSURANCE COMPANY, Appellee. (Defendant and Third–Party Plaintiff Below).

No. 04S03–9304–CV–439.

Supreme Court of Indiana.

April 15, 1993.

Nathaniel Ruff, Lesniak and Ruff, East Chicago, for appellant Luis Deluna, Jr.

Robert D. Brown, Spangler Jennings & Dougherty, Merrillville, for appellee, Allstate Ins. Co.

## ON PETITION TO TRANSFER

KRAHULIK, Justice.

We grant transfer to decide whether a self-insured municipality is under an obligation to provide uninsured motorist coverage for its automobiles. Allstate Insurance Company (Defendant and Third–Party Plaintiff below) ("Allstate") seeks transfer after the Court of Appeals reversed the summary judgment granted in favor of Allstate and against the City of Gary and the City of Gary Police Department (Third–Party Defendants below) ("City") and Luis Deluna, Jr. (Plaintiff below) ("Deluna").

*City of Gary v. Allstate Ins. Co.* (1992), Ind.App., 598 N.E.2d 625.

### Facts

Deluna, while on duty as a police officer for the City, was operating a City-owned police car when he was involved in an accident with Hanford Reed. Deluna sued Reed for the personal injuries that he sustained in the accident.

At the time of the accident, Deluna had in effect a personal automobile insurance policy with Allstate which provided uninsured motorist coverage. Upon learning that Reed's insurance carrier was insolvent, Deluna filed an amended complaint which added Allstate as a defendant. In turn, Allstate filed a third-party complaint against the City alleging that the City, as a self-insurer of the police car, was primarily liable for uninsured motorist coverage for Deluna. Allstate advanced this argument in its motion for summary judgment. The trial court agreed and granted Allstate's motion.

In reversing the trial court's grant of summary judgment, the Court of Appeals determined that, although self-insurers as a general rule are required to provide uninsured motorist coverage pursuant to *Ind. Code* § 27–7–5–2, the legislature demonstrated an intent to create governmental immunity in this type of case when it enacted the Tort Claims Act,[1] and that this Act created an exemption for the City from providing such coverage. Allstate asserts in its petition to transfer that a self-insured municipality is not exempt from providing the uninsured motorist coverage.[2]

### Discussion

The uninsured motorist statute in effect at the time of Deluna's accident stated:

Each automobile liability or motor vehicle liability policy of insurance which is delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person and for injury to or destruction of property to others arising from the ownership, maintenance, or use of a motor vehicle, must provide coverage, either in the policy or in a supplement to it:

(1) In limits for bodily injury or death and for injury to or destruction of property set forth in IC 9–2–1–15 [now IC 9–25–2–3] under policy provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom; or

(2) In limits for bodily injury or death set forth in IC 9–2–1–15 [now IC 9–25–2–3] under policy provisions approved by the commissioner of insurance, for the protection of persons insured under the policy provisions who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.

The uninsured motorist coverage may be offered by insurers in limits higher than those set forth in IC 9–2–1–15 [now IC 9–25–2–3], but may not be greater than the limits of liability specified in the bodily injury and property damage liability provisions of an insured's policy.

*Ind. Code Ann.* § 27–7–5–2(a) (West 1985). The named insured, however, has the right to exclude this coverage from the policy of insurance by providing the insurer with a written rejection. *Ind. Code* § 27–7–5–2(b).

---

1. *Ind. Code Ann.* § 34–4–16.5–1 to § 34–4–16.5–19 (West 1983).

2. In its petition to transfer, Allstate also asserted that the City was collaterally estopped from denying coverage. Because the issue of whether a self-insured municipality is under a statutory obligation to provide uninsured motorist coverage to its employees is dispositive, we do not address the collateral estoppel issue.

Allstate asserts that a municipality that self-insures its vehicles must also provide the statutorily-mandated uninsured motorist coverage. To support its assertion, Allstate argues that Indiana is a compulsory financial responsibility state which requires insurers and self-insurers to make uninsured motorist coverage available. Additionally, Allstate argues that *Ind. Code* § 34–4–16.5–3 of the Tort Claims Act does not create an exemption for the municipality from providing the uninsured motorist coverage and that the purpose of the uninsured motorist statute is defeated by creating the exemption.

In response, Deluna asserts that a municipality's status as a self-insurer[3] for purposes of the financial responsibility law[4] does not also obligate the municipality to provide the uninsured motorist coverage of the uninsured motorists coverage law. Additionally, Deluna contends that the statute requiring uninsured motorist coverage applies only to insurers because a self-insurer does not have a policy of insurance.

■ The purpose of Indiana's financial responsibility law is to compel motorists to make provisions for the protection of other drivers on the road so that a driver may be protected from damages which might be inflicted on him by another. *Trans-*

*america Ins. Co. v. Henry* (1990), Ind., 563 N.E.2d 1265, 1268. Although Indiana may be referred to as a compulsory financial responsibility state, a victim is not guaranteed compensation in every automobile accident. *Id.* A person complies with the financial responsibility law by providing proof that the person is able to respond in damages for liability caused through the ownership of the motor vehicle in the statutory amount. *Ind. Code* § 9–25–2–3.[5] The law permits proof of financial responsibility through the purchase of motor vehicle liability insurance, through bond, deposit of funds or securities, or self-insurance. *Ind. Code* §§ 9–25–4–7, 9–25–4–11.[6]

■ On the other hand, the purpose of uninsured motorist coverage is to put the injured party in the place they would have been if the other person had complied with the financial responsibility law. *See Town and Country Mutual Ins. Co. v. Hunter* (1985), Ind.App., 472 N.E.2d 1265, 1270.

The uninsured motorist statute in effect at the time of the accident referred to a "policy of insurance" and stated that the "insurer" may offer coverage in an amount in excess of the statutory minimum.[7] The statute, however, did not specifically address whether a self-insurer comes within the confines of the statute. Consequently,

**3.** Although the City has not been certified as a self-insurer under the financial responsibility law, we hold that the City's actions meet the technical requirements of the statute and are sufficient to qualify the City as a self-insurer for purposes of that law.

**4.** The financial responsibility law of Indiana, *Ind. Code* § 9–1–4–3.5 and §§ 9–2–1–1 to 9–2–1.5–13, has been repealed and recodified at *Ind. Code Ann.* §§ 9–25–1–1 to 9–25–8–4 (West 1992). Although the recodification was not verbatim, the changes were not substantive and do not affect our decision. For purposes of clarity, however, we will refer to sections of the financial responsibility law as they are now codified with a footnote reference to the previous code section.

**5.** Formerly *Ind. Code* § 9–2–1–15.

**6.** Formerly *Ind. Code* §§ 9–2–1–16, 9–2–1–37.

**7.** We note that *Ind. Code* § 27–7–5–2 was amended effective January 1, 1988. The amendment did not change the substance of the section, but

did add the following prefatory language to the section: "The insurer shall make available, in each automobile liability or motor vehicle liability policy of insurance...." An "insurer" for purposes of the Code is defined as "a company, firm, partnership, association, order, society or system making any kind or kinds of insurance and shall include associations operating as Lloyds, reciprocal or interinsurers, or individual underwriters." *Ind. Code* § 27–1–2–3. This definition does not include a self-insurer and can not be construed to encompass one. Additionally, the change in the statute is evidence that the legislature did not intend to include self-insurers in the statutory obligation to provide uninsured motorist coverage. But, rather, evidences the legislative intent to limit the requirement of providing uninsured motorist coverage to those offering a "policy of insurance." Consequently, our decision would remain the same under the statute in effect at the time of the accident or now.

we begin our analysis by distinguishing between insurance and self-insurance.

■ First, a policy of insurance is:

a contract of insurance or an agreement by which one party, for a consideration, promises to pay money or its equivalent or to do an act valuable to the insured upon the destruction, loss or injury of something in which the other party has a pecuniary interest, or in consideration of a price paid, adequate to the risk, becomes security to the other against loss by certain specified risks; to grant indemnity or security against loss for a consideration.

*Ind.Code* § 27–1–2–3(a). Generally, insurance is a contract of indemnity through which a party undertakes an obligation to compensate another against loss arising from certain specified contingencies or perils. It shifts the risk of loss from one party to another. *Meyer v. Building and Realty Serv. Co.* (1935), 209 Ind. 125, 135, 196 N.E. 250, 253–54; *Southeast Title and Ins. Co. v. Collins* (1969), Fla.App., 226 So.2d 247, 248; 1 *Mark S. Rhodes, Couch on Insurance 2d* §§ 1:2–1:3 (rev. ed. 1984).

Self-insurance, however, is not insurance at all but, rather, is the "antithesis of insurance." *Eakin v. Indiana Intergovernmental Risk Management Auth.* (1990), Ind.App., 557 N.E.2d 1095, 1098, (quoting *American Nurses Ass'n. v. Passaic Gen. Hosp.* (1984), Ct.App.Div., 192 N.J.Super. 486, 471 A.2d 66, 69). In *American Nurses Ass'n.*, the court explained, "[t]he essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." 471 A.2d at 69. As a result, the choice to self-insure does not mean that the party has "insurance," but rather that the party has chosen to retain the risk.

■ .In other jurisdictions which have considered a self-insurer's obligation to provide uninsured motorist coverage, a split of. authority has developed. One line of cases relying on a distinction between insurance and self-insurance holds that a self-insurer is not required to provide the uninsured motorist coverage. *See Mountain States Tel. and Tel. v. Aetna Casualty and Sur. Co.* (1977), Ariz.App., 568 P.2d 1123, 1125 (self-insured does not issue a policy of insurance and no contract exists between the insured and self-insurer); *O'Sullivan v. Salvation Army* (1975), 85 Cal.App.3d 58, 147 Cal.Rptr. 729, 733 (self-insurance does not involve the contractual obligations of an insurance company); *White v. Regional Transp. Dist.* (1987), Col.App., 735 P.2d 218, 219 (self-insurers are not required to obtain uninsured motorist coverage without a statutory provision requiring it); *Lipof v. Florida Power and Light Co.* (1990), Fla.App., 558 So.2d 1067, 1068 (self-insurer is not an "insurer" for most purposes under the Florida insurance code); *Robinson v. Hertz Corp.* (1986), Ill. App., 140 Ill.App.3d 687, 95 Ill.Dec. 111, 113, 489 N.E.2d 332, 334 (self-insurer does not offer a policy and may limit their liability); *Grange Mut. and Casualty v. Refiners Transp.* (1986), 21 Ohio St.3d 47, 487 N.E.2d 310, 314 (the uninsured motorist provisions do not encompass self-insurers and any change in the law must come from the legislature); *American States Ins. Co. v. Utah Transit* (1985), Utah, 699 P.2d 1210, 1212 (self-insurance is not insurance but rather an assurance that judgments will be paid); *Shelton v. American Re–Ins. Co.* (1970), 210 Va. 655, 173 S.E.2d 820, 823 (self-insurer does not have a "policy" of insurance).

As the Court of Appeals recognized, however, another line of cases holds that the distinction is immaterial and that a self-insurer is required to provide uninsured motorist coverage as if they had provided a policy of insurance. These cases do not, however, interpret the precise language used by our legislature in enacting the uninsured motorist statute. We believe they are not applicable here. We further believe that the above-cited cases, distinguishing between "insurers" and so-called "self-insurers," are better reasoned.

In choosing to be self-insured for purposes of the financial responsibility law, the City obligated itself to pay judgments rendered against it. In exchange for assuming the risk of paying judgments, the

City has saved the expense of purchasing a policy of insurance which would cover this risk. This does not mean, however, that the City has issued a "policy of insurance" or that it has become an "insurer" for anything beyond meeting the requirements of the financial responsibility act.

Although we recognize the remedial purpose of the uninsured motorist coverage statute and we may even agree that public policy favors a requirement that self-insurers under the financial responsibility law should be required to provide some sort of uninsured motorist protection for those who drive their automobiles, it is not our role to sit as a judicial legislator and write such a requirement into the act. Rather, this type of mandate must come from the legislature. The uninsured motorist coverage act applies only to "insurers" who issue or deliver a "liability policy of insurance." It does not apply to those who decide to retain the risk of loss and, therefore, do not purchase a policy of insurance.

Consequently, under the present statutory scheme the City, as a self-insured municipality, is not brought under the requirements of providing the uninsured motorist coverage of *Ind.Code* § 27–7–5–2 simply because it has chosen to be a self-insurer under the financial responsibility provisions. As a result, the City is not responsible to provide uninsured motorist coverage to Deluna.

### Conclusion

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, reverse the trial court's entry of summary judgment, and remand this matter to the trial court.

SHEPARD, C.J., and GIVAN, J., concur.

DeBRULER, J., dissents, with separate opinion in which DICKSON, J., concurs.

DICKSON, J., would grant transfer, but dissents as to this opinion and concurs with DeBRULER, J.'s dissent.

## ON PETITION TO TRANSFER

DeBRULER, Justice, dissenting.

The insurance policy is by far the dominant means in our society of providing mo-

torist financial responsibility. Financial responsibility must be maintained in the amount of $25,000 by means of an insurance policy, however, a bond, a deposit of money, or a certificate of self-insurance may also be sufficient. Ind.Code § 9–25–4–7; I.C. § 9–25–4–11. The intent of the legislature is evident. Each such means carries an equivalent protective value. The bond, the deposit, and the certificate of self-insurance are seen as sufficient, equivalent substitutes for the policy. Indeed, expressly, a bond must be equal to a policy. I.C. § 9–25–4–9. I.C. § 27–7–5–2 added the requirement that insurance policies initially provide uninsured motorist coverage. This became part of financial responsibility, not only where an insurance policy is used, but, through the intent to authorize equivalent means, where, as here, self-insurance or a certificate of self-insurance, is used.

I would hold therefore, as did the trial court, and the Court of Appeals, that self-insurers such as the City of Gary must provide uninsured motorist coverage as required by I.C. § 27–7–5–2. Since the majority does not reach the exemption question considered in the Court of Appeals, I find no reason to do so.

DICKSON, J., concurs.