22-863(L)
*Loomis v. ACE American Insurance Company*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2023

(Argued: September 22, 2023   Decided: January 23, 2024)

Docket Nos. 22-863, 22-1037

WILLIAM LOOMIS,

*Plaintiff-Appellant-Cross-Appellee,*

–v.–

ACE AMERICAN INSURANCE COMPANY,

*Defendant-Appellee-Cross-Appellant.*

Before:      BIANCO, ROBINSON, and NATHAN, *Circuit Judges.*

This case requires us to determine whether 1) an insurer who fails to comply with New York laws requiring insurers to offer optional supplemental uninsured/underinsured motorist coverage to motor vehicle liability insurance policyholders can be liable to an injured insured for the underinsured motorist coverage that should have been offered, and 2) whether an insurer who issues an automobile liability insurance policy that provides coverage above a $3 million "retained limit" is liable to pay underinsured motorist benefits under Indiana law when an insured suffers

damages in excess of the tortfeasor's $50,000 policy limit and has no other underinsured motorist coverage to cover damages up to the $3 million retained limit.

We conclude that Loomis is not entitled to the relief that he seeks under New York law. Although insurers are required to *offer* supplemental uninsured/underinsured motorist coverage to insureds in New York, the coverage is optional. Even if the insurer violated New York law by failing to offer the supplemental coverage, Loomis's claim seeking reformation of the insurance contract between Loomis's employer and the insurer to include the optional supplemental coverage is not supported by New York law. Accordingly, we **AFFIRM** the district court's grant of summary judgment as to Loomis's claim under New York law.

With respect to his argument that Indiana law requires the insurer to provide underinsured motorist coverage, we cannot confidently predict how the Indiana Supreme Court will interpret the relevant statute, and no controlling precedent from Indiana's highest court resolves the important questions that this case raises about the state's underinsured motorist insurance regime. Therefore, we **CERTIFY** questions to the Indiana Supreme Court.

―――――――――

MICHAEL J. LONGSTREET (Martha L. Berry, *on the brief*), Longstreet & Berry, LLP, Fayetteville, NY, *for Plaintiff-Appellant-Cross-Appellee*.

KURT M. MULLEN, Nixon Peabody LLP, Boston, MA (Michael B. de Leeuw, Tamar S. Wise, Cozen O'Connor, New York, NY, *on the brief*), *for Defendant-Appellee-Cross-Appellant*.

―――――――――

ROBINSON, *Circuit Judge*:

Plaintiff William Loomis is a truck driver who was injured in a car accident in New York. He recovered some damages from the underinsured tortfeasor's

insurer, and subsequently sought recovery from Defendant ACE American Insurance Company ("ACE"), his employer's insurance company, for his remaining damages.

When ACE declined to pay, Loomis sued under New York law and Indiana law. He claimed that ACE failed to comply with both states' laws requiring an insurer to provide underinsured motorist coverage. The primary issue before the district court was whether ACE was liable to Loomis for underinsured motorist coverage under the law of either state.

Reviewing competing motions for summary judgment, the district court first granted ACE's motion as to the applicability of New York law, and granted Loomis's motions as to the applicability of Indiana law. Subsequently, the district court granted ACE's motion for summary judgment on an additional question of Indiana law. On appeal, the parties challenge the respective grants of summary judgment.

First, under New York law, we must determine whether an insurer who fails to comply with New York laws requiring insurers to offer optional supplemental uninsured/underinsured motorist coverage to motor vehicle liability insurance policyholders is liable to an injured insured for the underinsured motorist coverage that should have been but was not properly

3

offered. Second, under Indiana law, we must assess whether an insurer who issues an automobile liability insurance policy that does not provide liability coverage until the insured pays a $3 million "retained limit" is liable to pay underinsured motorist benefits under Indiana law when the insured suffers damages in excess of the tortfeasor's $50,000 policy limit and has no other underinsured motorist coverage to cover damages up to the $3 million retained limit.

We conclude that Loomis is not entitled to the relief that he seeks under New York law. Although insurers are required to *offer* supplemental uninsured/underinsured motorist coverage to insureds in New York, the coverage is optional. Even if ACE violated New York law by failing to offer supplemental underinsured motorist coverage, Loomis's claim seeking reformation of the insurance contract between Loomis's employer and the insurer to include the optional supplemental coverage is not supported by New York law. Accordingly, we **AFFIRM** the judgment of the district court on the question of New York law.

Loomis also argues that Indiana law requires the insurer to provide underinsured motorist coverage. On this question, we cannot confidently predict how the Indiana Supreme Court will interpret the relevant statute, and

4

no controlling precedent from Indiana's highest court resolves the important questions that this case raises about the state's underinsured motorist insurance regime. Therefore, we **CERTIFY** questions to the Indiana Supreme Court.

## BACKGROUND

This case implicates two states' respective statutes regulating underinsured motorist coverage. Underinsured motorist ("UIM") coverage covers damages sustained by an insured victim caused by an identifiable at-fault driver who has some liability insurance, but for an amount that is 1) lower than the victim's UIM limits and 2) insufficient to make the insured whole. 9 Couch on Insurance § 122:3 (3d ed. 2023). It is closely related to uninsured motorist ("UM") coverage, which provides direct compensation to an insured who is injured by an at-fault motorist who has no liability insurance at all. *Id.* § 122:2.

### I. Loomis's Claim

In October 2017, a car crossed the center lane and slammed into a truck that Loomis was driving in New York for his employer, XPO Logistics ("XPO"). Loomis recovered the policy limit of $50,000 from the tortfeasor's insurer and sought underinsured motorist benefits from ACE, which insured the XPO truck that Loomis was driving, to cover his remaining damages. ACE denied his claim. Loomis now challenges ACE's denial, asserting that New York and

Indiana statutes regulating underinsured motorist insurance require ACE to cover his remaining damages up to the Policy's liability limit of $7 million.

## II.  The Policy

The truck that Loomis was driving was insured under a policy that XPO had purchased from ACE ("the Policy").

The Policy's "Excess Business Auto Coverage Form" includes several provisions relevant here.  First, in the "liability coverage" section, the Policy states in pertinent part that ACE "will pay the 'insured' for the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' . . . caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'."  Jt. App'x at 204.  "Ultimate net loss" is defined as "the total amount the 'insured' is legally obligated to pay as damages for a covered claim or 'suit'" and "does not include any of the expenses incurred by the 'insured' or [ACE] in connection with defending the claim or 'suit'."  *Id.* at 216.

Second, the form includes "Uninsured and Underinsured Motorists Coverage" in the list of exclusions from coverage.  *Id.* at 209.  It states that the "insurance does not apply to . . . 'Bodily Injury' or 'Property Damage' caused by an 'accident' with an uninsured or underinsured 'auto'."  *Id*. at 205, 209.

6

Third, the form's "Limit of Insurance" provision includes the following statement: "You agree to assume the payment of the 'retained limit' before the Limits of Insurance become applicable." *Id.* at 209. "Retained limit" is defined under the Policy as "the amount [the insured] must pay before the Limits of Insurance become applicable. . . ." *Id.* at 216, 238.[1]

The relevant Policy declarations are titled "Excess Business Auto Policy" and "Excess Truckers Liability Policy." *Id.* at 193. They reflect $7 million in liability coverage for any single accident or loss and a $3 million retained limit for any single accident or loss. *Id.* at 193–94. In other words, in the event of an accident in which an XPO driver is at fault, the insured—XPO—must pay the injured party $3 million before ACE's $7 million liability coverage kicks in.

The Policy is accompanied by a UM/UIM Coverage Summary form, which states that "[n]o Coverage is offered or provided for vehicles principally garaged or registered in" all states except Alaska, Florida, Louisiana, New Hampshire, Vermont, and West Virginia. *Id.* at 190. As relevant here, it states that XPO has specifically "rejected coverage" in a number of states. *Id.* at 190, 422. ACE submitted evidence that XPO expressly declined excess uninsured and

---

[1] ACE refers to the retained limit as a "self-insured retention" or "SIR," as do some of the cases discussed in this opinion. *See* Appellee's Br. at 1. In referencing the Policy here, we use the term "retained limit" to match the language in the Policy.

underinsured motorist coverage, both generally and for specific states. XPO did not specifically reject UIM coverage for Indiana or New York, but none of the forms presented to XPO were Indiana—or New York—specific. *See id.* at 416–30.

## III.     District Court Proceedings

After ACE rejected Loomis's claim for underinsured motorist coverage, Loomis filed a complaint in the New York Supreme Court for the County of Oneida. He alleged that ACE had breached the insurance agreement by failing to adjust and pay Loomis's claim for underinsured motorist coverage under Indiana and New York law, and he sought judgment against ACE "in an amount to be determined by a jury." *Id.* at 5–6. ACE removed the case to the U.S. District Court for the Northern District of New York based on diversity jurisdiction. After discovery, the parties cross moved for summary judgment.

The parties' disputes at summary judgment were narrow. Before the district court, the parties did not dispute that the Policy covered the XPO truck that Loomis was driving. They also agreed that Loomis was a covered "insured" person under the Policy when the accident occurred, that he had settled his claim against the tortfeasor for the $50,000 policy limit of the tortfeasor's insurance, and that he had satisfied all necessary prerequisites to sue ACE for UIM coverage.

In addition, the parties agreed for purposes of summary judgment that the truck was registered in Indiana and garaged in New York, meaning that both Indiana and New York law apply. *See* N.Y. Ins. Law § 3420(f)(1) (New York UM/UIM requirements apply to insurance on motor vehicles "principally garaged or principally used in" New York);[2] Ind. Code § 27-7-5-2(a) (Indiana UM/UIM requirements apply "to any motor vehicle registered or principally garaged" in Indiana).[3] They further acknowledged that "[b]y its terms," the Policy does not provide UIM coverage in Indiana or New York. Jt. App'x at 445.

The primary issue before the district court was whether ACE was liable to Loomis for underinsured motorist coverage under New York and/or Indiana law.

In February 2021, the district court granted summary judgment to ACE with respect to Loomis's claim under New York law, and to Loomis with respect to his claim under Indiana law. *Loomis v. ACE American Insurance Co.*, 517 F.

---

[2] The New York Legislature has amended New York's supplemental uninsured/underinsured motorist ("SUM") insurance statute since the October 2017 accident, but those amendments are not material to the issues in this case. *See* 2017 N.Y. Sess. Laws Ch. 490, S. 5644-B; 2018 N.Y. Sess. Laws Ch. 15, S. 7288; 2019 N.Y. Sess. Laws Ch. 59, S. 1509-C; 2022 N.Y. Sess. Laws Ch. 735, A. 1029. When we refer to the New York statute, we mean the version in effect at the time of the accident. *See* N.Y. Ins. Law § 3420(f) (2013).

[3] Indiana Code § 27-7-5-2 has also been amended since October 2017 in ways that are not material to our analysis. *See* 2018 Ind. Legis. Serv. P.L. 208-2018, § 9; 2020 Ind. Legis. Serv. P.L. 130-2020, § 13. When we refer to the Indiana statute, we mean the version in effect at the time of the accident. *See* Ind. Code § 27-7-5-2 (2013).

Supp. 3d 95 (N.D.N.Y. 2021) ("*Loomis I*"). Regarding the New York law claim, the court explained that New York's statutory mandate that insurers provide *un*insured motorist coverage did not apply here because Loomis was injured in a collision with an *under*insured driver, not an uninsured driver. *Id.* at 116–17. The court further concluded that ACE had violated New York's statute and regulations requiring insurers to offer to sell insureds *optional* supplemental uninsured/underinsured motorist coverage ("SUM"). *Id.* at 117–18. But the court declined to read the optional SUM coverage into the Policy. It reasoned that the laws requiring insurers to offer SUM coverage do not give insureds a private right of action to seek reformation of an insurance contract that, by its terms, excludes SUM coverage, and Loomis had not shown he otherwise had standing to bring, or could meet the requirements of, a contract reformation claim under New York law. *Id.* at 119.

Regarding the Indiana law claim, the district court explained that Indiana's UM/UIM statute requires every motor vehicle liability insurance policy covering a vehicle registered or principally garaged in Indiana to include UM and UIM coverage in limits at least equal to the policy's liability limits for bodily injury unless the insured affirmatively rejects such coverage in writing. *Id.* at 104. At issue was whether the exemption from this requirement for "commercial

10

umbrella or excess liability" policies applies to the Policy in light of the Policy's $3 million retained limit. *Id.* The court concluded that the exemption does not apply because the Policy is not "excess" over underlying insurance; the district court thus read Indiana's mandatory UM/UIM coverage provisions into the Policy. *Id.* at 105–14.

Following the court's February 2021 memorandum order, ACE filed what the court construed as a supplemental motion for summary judgment on an additional legal issue—whether, after reading Indiana's UM/UIM mandatory coverage provisions into the Policy, ACE has any obligation to pay Loomis for his ultimate net loss within the policy's $3 million retained limit.

In March 2022, the district court issued a memorandum order addressing the supplemental motion for summary judgment. *See Loomis v. ACE American Insurance Co.*, 593 F. Supp. 3d 34 (N.D.N.Y. 2022) ("*Loomis II*"). It concluded that the retained limit is a valid condition precedent to ACE's liability that does not violate the UM/UIM statute. *Id.* at 44–46. Therefore, because the retained limit is not "prohibited by or incompatible with the Indiana UM/UIM Statute," and has not been exhausted, the district court granted summary judgment on this issue in ACE's favor. *Id.* at 48.

Together, the district court's two orders encompass three holdings. First, Loomis is not entitled to relief under New York's UM or SUM statutes. Second, the Policy is not exempt from Indiana's UM/UIM statute, so Indiana's mandatory coverage provisions must be read into it. And third, even after reading the mandatory UIM provisions into the Policy, ACE does not have to provide Loomis with UM/UIM coverage until the retained limit in the liability policy has been exhausted.

The district court entered final judgment for ACE in April 2022, and both parties timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## DISCUSSION

The issues raised in this appeal largely track those raised in the district court. We consider Loomis's challenges under New York and Indiana law, respectively.

## I. Standard of Review

We review without deference the district court's grant of summary judgment when, as here, "the parties filed cross-motions for summary judgment and the district court granted one motion but denied the other." *Atlas Air, Inc. v. International Brotherhood of Teamsters*, 943 F.3d 568, 576–77 (2d Cir. 2019) (alteration adopted). Summary judgment is proper when there are no genuine

12

disputes of material fact and the movant is entitled to judgment as a matter of

law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986).

## II.   New York Law

New York law requires insurers to offer optional supplemental uninsured

or underinsured motorist coverage, and to notify insureds that the SUM

coverage is available:

> . . . [U]pon issuance of a policy of motor vehicle liability
> insurance . . . insurers shall notify insureds, in writing, of the
> availability of supplementary uninsured/underinsured
> motorists coverage.   Such notification shall contain an
> explanation of supplementary uninsured/underinsured
> motorists coverage and the amounts in which it can be
> purchased.   Subsequently, a notification of availability shall
> be provided at least once a year . . . .

N.Y. Ins. Law § 3420(f)(2)(B); *see also* 11 N.Y.C.R.R. § 60-2.2(a)(1)(i)–(iii)

(implementing regulation describing specific terms of the required notice).[4]

Loomis contends that he is entitled to SUM coverage because ACE failed to

comply with New York's statutory and regulatory requirements that it offer XPO

SUM coverage in connection with the Policy.   He argues that ACE's failure to

---

[4] Like the New York SUM statute, the implementing regulation has been amended since October 2017.   *See* 11 N.Y.C.R.R. § 62-2.2(a) (Oct. 25, 2017; May 11, 2018; Aug. 9, 2018; Oct. 5, 2018; Nov. 28, 2018; June 17, 2022; Sept. 15, 2022; Dec. 13, 2022; Feb. 8, 2023).   We refer to the regulation that was in effect when the accident occurred.   *See* 11 N.Y.C.R.R. § 62.2.2(a)(1)(i)–(iii) (Sept. 1, 2017).

properly offer notice of SUM coverage means "that this Court has plenary jurisdiction to award SUM benefits" up to the Policy's $7 million liability limit "as remedy for violation of [the] New York statute requiring the offer of such limits in writing." Appellant's Br. at 24. In other words, Loomis is asking this Court to reform the Policy by reading the SUM coverage into it. Loomis's argument is unavailing.

Even assuming that ACE violated New York law by failing to give XPO the required notice that SUM coverage was available, Loomis is not entitled to the equitable remedy he seeks under New York law—namely, reformation of the insurance contract between ACE and XPO to include the optional SUM coverage that was neither offered to nor purchased by XPO. Nothing in the statute supports Loomis's proposed remedy, and he has not presented a cognizable claim for reforming the Policy under New York common law.

New York law *requires* insurers to provide uninsured motorist coverage. *See* N.Y. Ins. Law § 3420(f)(1). Under New York law, a policy that fails to include UM coverage is construed as including the mandatory coverage. *Id.* § 3103(a) ("[A]ny policy of insurance . . . shall be valid and binding upon the insurer . . . , but in all respects in which its provisions are in violation of the requirements or prohibitions of this chapter it shall be enforceable as if it conformed with such

14

requirements or prohibitions."); *see also Metro Missions, Inc. v. US 1 Holdings*, 954

N.Y.S.2d 760, *5 n.2 (Sup. Ct. 2012) (recognizing that required coverage under

§ 3420(f)(1) is deemed included in insurance policy even if it is not expressly

included).

By contrast, New York law requires only that insurers *offer* to provide

*optional* supplemental uninsured/underinsured motorist coverage. *Id.*

§ 3420(f)(2)(B). Nothing in the statute suggests that an available remedy for an

insurer's failure to properly offer the optional SUM coverage is to read the

coverage into a policy that otherwise disclaims it.

Nor has Loomis made out a common law claim for reforming the XPO-

ACE insurance contract. Even if Loomis had standing to seek reformation of a

contract between XPO and ACE, he still hasn't established a basis for

reformation. In New York, insurance policies are reformed only when there is

evidence of fraud or mutual mistake. *AMEX Assurance Co. v. Caripides*, 316 F.3d

154, 161 (2d Cir. 2003). But Loomis doesn't invoke either doctrine—the words

"fraud" and "mistake" are not in his briefs.

In short, even if ACE failed to properly provide XPO with notice of *optional*

SUM coverage, it does not follow that Loomis is now *entitled* to that coverage.

The district court did not err in so holding.

15

## III. Indiana Law

Indiana's UM/UIM statute requires that automobile liability insurance policies covering motor vehicles registered or principally garaged in Indiana include uninsured or underinsured motorist coverage "in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy," unless the insured has rejected that coverage in writing or one of the listed exemptions applies. Ind. Code § 27-7-5-2(a). Any provision in an automobile insurance contract that has the effect of providing *less* than this level of protection is "contrary to public policy, and of no force and effect." *Napier v. American Family Mutual Insurance Company*, 179 N.E.3d 504, 509 (Ind. Ct. App. 2021) (citing *Scalf v. Globe American Casualty Co.*, 442 N.E.2d 8, 10 (Ind. Ct. App. 1982)).

The parties agree that the Policy on its face excludes UIM coverage. The contested questions here are 1) whether the Policy is exempt from the requirements of § 27-7-5-2(a) such that ACE's exclusion of UIM coverage is enforceable; and 2) whether, if the Policy is not exempt from the statute's UIM requirement, and ACE therefore has to include UIM coverage in the Policy, the Policy's retained limit is enforceable for purposes of UIM coverage.

16

As set forth below, with respect to both issues, we cannot confidently predict how the Indiana Supreme Court would answer these important questions.

*A. "Commercial Excess Liability Policy" Exemption*

Although, as noted above, Indiana law generally requires that motor vehicle liability insurance policies include UM and UIM coverage, Ind. Code § 27-7-5-2(a), the UM/UIM statute expressly exempts "commercial umbrella or excess liability polic[ies]" from the UM/UIM requirement. *Id.* § 27-7-5-2(d). "Excess liability policy" is not defined in the statute. There is no question here that the Policy is "commercial"; but whether the Policy is an "excess liability policy" for purposes of the exemption from Indiana's UM/UIM requirements is contested.

ACE argues that the Policy is exempt as a "commercial excess liability policy" because it provides $7 million in "excess" liability coverage over the $3 million retained limit. It asserts that the UM/UIM statute unambiguously exempts "excess" policies, and nothing in the statute limits the exemption to policies that are "excess" over underlying insurance as opposed to a retained limit. ACE emphasizes that the Policy bears a number of the hallmarks of a true excess policy as understood by the Indiana Court of Appeals in *Monroe Guaranty*

17

*Insurance Co. v. Langreck*, 816 N.E.2d 485 (Ind. App. 2004).  In particular, ACE

notes that the Policy identifies itself as an excess policy, leaves XPO with the

responsibility for adjusting claims under the $3 million retained limit, and

provides for full coverage of loss in excess of the $3 million retained limit rather

than treating that limit as a deductible.[5]  And ACE cites a number of Indiana

intermediate appellate decisions that characterize particular policies as providing

"excess" coverage even though they stand atop retained limits and not

necessarily underlying primary insurance.

ACE responds to the concern that its interpretation would leave insureds

like Loomis without underinsured motorist coverage, in contravention of the

Indiana Legislature's intent, by pointing to the Indiana Supreme Court's decision

in *City of Gary v. Allstate Insurance Co.*, 612 N.E.2d 115 (Ind. 1993).  In *City of Gary*,

Indiana's high court recognized that the Legislature's uninsured motorist statute

---

[5] Indiana courts have noted that "[t]here are key differences between a deductible, which generally exist in primary policies, and retained amounts, which generally are found in umbrella policies or policies designed to be excess of a self-insured amount."  *Monroe Guaranty Insurance Co. v. Langreck*, 816 N.E.2d 485, 495 (Ind. Ct. App. 2004).  For example, "[o]ne difference is that while a deductible is subtracted from a policy's limits, thereby reducing an insurer's total obligation to the insured, the full limits of a policy including a retained amount are available to the insured once that amount has been satisfied."  *Id.*  Another difference is that "a policy with a deductible obliges the insurer to respond to a claim from 'dollar one' (i.e., immediately upon tender), subject to the insurer's right to later recoup the amount of the deductible from the insured.  A policy subject to a SIR, in contrast, obliges the policyholder itself to absorb expenses up to the amount of the SIR, at which point the insurer's obligation is triggered."  *Allianz Insurance Co. v. Guidant Corp.*, 884 N.E.2d 405, 410 n.2 (Ind. Ct. App. 2008) (cleaned up).

did not apply to a self-insured municipality, thereby leaving municipal employees without uninsured motorist coverage. *Id.* at 118–19. Therefore, ACE argues, the UIM regime can be read as exempting the coverage here, which is excess over a retained limit.

Loomis counters that the Policy is not "excess" for purposes of the exemption. He contends that the undefined term "excess liability policy" is susceptible to more than one reasonable interpretation and is thus ambiguous. In Loomis's view, an excess policy "is one that renders an insurer liable for the excess above and beyond that which may be collected on primary insurance." Loomis's Reply Brief at 4. He also notes that the Policy contains terms typically found in a primary auto policy, including an endorsement for "motor carrier coverage" and a UM/UIM coverage summary endorsement that requires explicit rejection in various states. And he contrasts ACE's policy with the standard Insurance Services Office ("ISO") form for commercial excess liability, which explicitly contemplates that the coverage is excess to underlying insurance.

Loomis further points out that the statutory exemption for commercial umbrella and excess liability policies was added in response to an Indiana Supreme Court decision applying the requirements of the UM/UIM statute to a *traditional* excess/umbrella policy—meaning one that provides excess coverage

19

over *underlying insurance*. *See United National Insurance Co. v. DePrizio*, 705 N.E.2d 455 (1999). He contends the exemption's breadth should be understood in light of the *DePrizio* decision to which the Legislature was responding; had the Legislature also intended to include policies that provide coverage beyond a retained limit, as opposed to underlying insurance, it could have said so.

Additionally, Loomis emphasizes that the purpose of Indiana's UM/UIM statute informs the meaning of "excess liability policy." None of the cases ACE relies on concerning the meaning of "excess" insurance involved Indiana's mandatory UM/UIM coverage. In Loomis's view, those decisions, like the labels ACE used on its insurance form, bear little relevance to the issue before us.

Both sides of this argument score some points, and we cannot confidently predict how the Indiana Supreme Court would resolve the question. As we explain more fully below, several factors in particular drive our uncertainty. First, the term "excess liability policy" is undefined in the statute, and the term does not have such a clear plain meaning that it need not be defined. Second, although our conclusion that the meaning of the term isn't clear would ordinarily resolve the question in favor of coverage, Indiana cases addressing excess policies cause us some uncertainty. On the one hand, intermediate Indiana courts have in some cases described liability policies that provide coverage over

20

a retained limit as "excess"; on the other hand, in the only cited case involving an automobile liability policy, that policy was expressly excess to scheduled underlying primary insurance, and none of the decisions ACE relies on deal with Indiana's mandatory UM/UIM statutes. Finally, the Indiana Supreme Court decisions that offer potential clues to our question are far from determinative.

### 1. Elusive Plain Meaning

The Indiana Supreme Court's "primary goal in reviewing statutes is to determine and follow the legislature's intent." *In re Supervised Estate of Kent*, 99 N.E.3d 634, 638 (Ind. 2018). The best evidence of that "intent is the language of the statute itself," so the statute's words "must be given their plain and ordinary meaning unless otherwise indicated by the statute." *Cubel v. Cubel*, 876 N.E.2d 1117, 1120 (Ind. 2007). At the same time, the statute "should be examined as a whole, avoiding both excessive reliance on strict literal meaning and selective reading of individual words." *Id.* This holistic reading is necessary because the Indiana Supreme Court "presumes that the legislature intended for the statutory language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Id.* With these principles in mind, we examine the statute's text.

21

As the district court noted, "commercial excess liability policy" is not defined in the UM/UIM statute. *Loomis I*, 517 F. Supp. 3d at 106.

And dictionaries are not particularly helpful in determining the meaning of the term in this statute. *See Kent*, 99 N.E.3d at 638 (noting that dictionaries may be helpful in determining a term's meaning). For example, *Black's Law Dictionary* defines "excess insurance" to mean "[a]n agreement to indemnify against any loss that exceeds the amount of coverage under *another policy*." *Insurance*, Black's Law Dictionary (11th ed. 2019) (emphasis added). But *Merriam-Webster's Unabridged Dictionary* defines "excess insurance" as "insurance in which the underwriter's liability does not arise until the loss exceeds a *stated amount* and then only on the excess above that amount." *Excess Insurance*, Merriam-Webster's Unabridged Dictionary, https://www.merriam-webster.com/dictionary/excess%20insurance [https://perma.cc/Q9FG-RBM9] (last visited Jan. 22, 2024) (emphasis added). These dictionaries pull us in different directions and lend credence to both parties' proposed interpretations. Without more, it isn't clear whether the term "excess liability policy" presumes the existence of an underlying policy of liability insurance, as opposed to simply a retained limit below which the insured assumes financial responsibility for the loss. Without more, both parties' interpretations are reasonable. *See Wagner v.*

*Yates*, 912 N.E.2d 805, 810 (Ind. 2009) ("[A]n insurance policy is ambiguous if a provision is susceptible to more than one reasonable interpretation.").

## 2. Cases Involving "Excess" Insurance

Ordinarily, the conclusion that the exemption's plain meaning is unclear would resolve the question in Loomis's favor. *See Lakes v. Grange Mutual Casualty Co.*, 964 N.E.2d 796, 804–05 (Ind. 2012) (noting that ambiguity in the UM/UIM statute "is to be resolved in favor of the insured"). But ACE suggests that in light of various decisions from the Indiana Court of Appeals, the term "excess liability policy" *does* have a clear meaning under Indiana law.

The decisions ACE relies on may offer some insight into the meaning of "excess" for purposes of the statutory exemption, but those cases are meaningfully distinguishable.

In the primary case ACE relies on, *Langreck*, a member of Indiana University's Rowing Club lost control of a University van that she was driving, severely injuring several teammates who were also in the van. A central issue on appeal was which of two potentially liable insurers, Monroe Guaranty or TIG, was primary with respect to liability claims arising from the accident. The Monroe Guaranty policy was a commercial general liability policy; it included a "Non-owned" and "Hired" automobile endorsement that included an "other

23

insurance" clause that stated that the insurance was "excess over any of the other insurance . . . covering the auto as an owned auto." *Langreck*, 816 N.E.2d at 488. The TIG policy was an umbrella policy. The court followed the general rule that "a true excess insurance policy is secondary in priority to a primary insurance policy," even if the primary insurance policy includes provisions purporting to make itself excess to any other available insurance. Applying this rule, the court considered whether the TIG policy was a "true excess" policy. *Id.* at 492–94.

It concluded that the TIG policy was a "true excess" policy for a host of reasons, including that 1) the policy was an umbrella policy designed to provide catastrophic liability coverage; 2) the "Certificate of Liability Insurance" described the policy as an "Excess Liability" policy rather than as a "General Liability," "Automobile Liability," or other type of policy; 3) the policy applied in excess of a "retained amount," which was defined to include an amount retained by the insured or covered by an underlying insurance policy; 4) the policy disclaimed any responsibility to defend or settle claims, and simply reserved the right to participate in the defense if damages were expected to exceed the retained amount; and 5) the policy expressly listed the Monroe Guaranty policy in a schedule of underlying insurance. *Id.* at 494–95.

*Langreck* offers some support for ACE's position. Like the TIG policy the *Langreck* Court described as a "true excess" policy, the ACE Policy 1) is labeled as an "Excess Business Auto [and Truckers Liability] Policy," Jt. App'x at 193; 2) does not, by its own terms, apply until the retained limit is exhausted, *id.* at 216, 238; and 3) gives ACE the right, but not the obligation, to assume the defense and control of suits with damages that would likely exceed the retained limit, *id.* at 204.

But we are not at all confident that the Indiana Supreme Court would find *Langreck* persuasive in interpreting the "excess liability policy" exemption to Indiana's UM/UIM statute. The *Langreck* case involved two competing insurers; there was no question that at least *one* of them would cover the insured. And the question before the court was which carrier was primary with respect to *liability* coverage. The *Langreck* case did not involve UM/UIM coverage and did not interpret the UM/UIM statute or the "commercial excess liability policy" exemption. Moreover, the TIG policy that the *Langreck* Court described as "excess" was a traditional umbrella policy that specifically listed the underlying Monroe Guaranty policy in its schedule of underlying insurance. Thus, the *Langreck* Court was not confronted with the question facing us: Is a policy that provides liability coverage over *only a retained limit*, and not an underlying

25

insurance policy, a "commercial excess liability policy" for purposes of the exemption in § 27-7-5-2(d) to the UM/UIM requirements in § 27-7-5-2(a)?

Likewise, the other Indiana cases ACE cites to show that excess liability policies can be "excess" over a retained limit are far removed from Indiana's UM/UIM statute and the statute's "excess liability policy" exemption. *See, e.g., Cinergy Corp. v. Associated Electric & Gas Indus. Services, Ltd.*, 865 N.E.2d 571, 582–83 (Ind. 2007) (concluding an excess liability insurer was not obligated under policy terms to pay defense costs because claims against insured power companies under the Clean Air Act did not arise from an "occurrence"); *Allianz Insurance Co. v. Guidant Corp.*, 884 N.E.2d 405, 420 (Ind. Ct. App. 2008) (holding in products liability context that an excess liability insurer's duty to defend is triggered only after self-insured retention is exhausted); *Trinity Homes LLC v. Ohio Casualty Insurance Co.*, No. 1:04-cv-1920, 2007 WL 1021825, at *15 (S.D. Ind. Mar. 30, 2007) (concluding in context of commercial general liability policy covering an insured's losses arising from its defective construction projects that the $50,000 self-insured retention transformed the policy "into an excess policy covering only amounts in excess of the self-insured retention") (quotation marks omitted).

In short, we are not convinced that the decisions ACE cites clearly establish that commercial *automobile liability policies* subject to a substantial retained limit, and without underlying primary automobile insurance policies, are exempt from Indiana's UM/UIM insurance requirement as "excess liability policies."

### 3. *City of Gary* and *DePrizio*

Two Indiana Supreme Court decisions cited by the parties may offer some relevant insights, but neither is dispositive of the question before us.

First, in *City of Gary*, a police officer was injured while driving a City-owned police car. 612 N.E.2d at 116. The at-fault driver's insurance company was insolvent, so the officer argued "that the City, as a self-insurer of the police car, was primarily liable for uninsured motorist coverage" under an older version of Indiana's UM statute that did not yet require insurers to provide UIM coverage. *Id.*[6]

The Indiana Supreme Court disagreed, holding that the City was not required to provide coverage because the UM statute applied only to insurers, and not to self-insurers like the City. *Id.* at 119. In doing so, the Court

---

[6] Under Indiana law, self-insurance is the "retention of the risk of loss by the one upon whom it is directly imposed by law or contract," and in essence, "the choice to self-insure does not mean that the party has insurance, but rather that the party has chosen to retain the risk." *City of Gary v. Allstate Insurance Co.*, 612 N.E.2d 115, 118 (Ind. 1993) (cleaned up).

recognized that the remedial purpose of Indiana's UM statute might favor a requirement that self-insurers under the financial responsibility law be required to provide uninsured motorist protection for those who drive their automobiles, but it concluded that "this type of mandate must come from the legislature." *Id.*

At a high level of generality, *City of Gary* might support ACE's position insofar as it recognizes that Indiana's UM statute left some individuals—those working for self-insured employers—without the benefit of the statute's protections. But the dispositive consideration in *City of Gary* was that the UM statute applied only to *insurers*, and not to those who retain the risk of loss and therefore do not purchase insurance. 612 N.E.2d at 119. Had Loomis sued *his employer*, XPO, for UIM benefits under the statute, *City of Gary* might be more on point. But because ACE is undisputedly an "insurer" who has delivered an "automobile liability or motor vehicle liability policy of insurance," § 27-7-5-2(a), the holding of *City of Gary* does not apply here, and the decision does little to move the needle on the question whether the Policy falls within the "excess liability policy" exemption.

Second, in *DePrizio*, decided before the Indiana Legislature enacted the exemption at issue here, the Indiana Supreme Court held "that Indiana's underinsured motorist statute requires an umbrella policy that covers excess

28

third-party automobile liability claims to also cover excess uninsured motorist claims." 705 N.E.2d at 456. In that case, the estate of an employee who was killed by an underinsured motorist sought UIM coverage under the employer's insurance policies, including an umbrella policy that covered "ultimate net loss in excess of the applicable underlying policy limits." *Id.* at 456–57.

On appeal, the Indiana Supreme Court considered whether an umbrella policy is an "automobile liability or a motor vehicle liability policy" that must include UM/UIM insurance under § 27-7-5-2. *Id.* at 457.[7] The Court recognized that the UM/UIM statute had evolved into "a mandatory coverage, full-recovery, remedial statute." *Id.* at 459–60. Given these considerations, the Court concluded that, "absent an explicit statutory exemption to the contrary," the UM/UIM statute applied to the umbrella policy. *Id.* at 464.

At a high level, *DePrizio* supports Loomis's view that in the absence of a clear exemption, we should construe UM/UIM coverage under § 27-7-5-2(a) broadly, and should thus construe the exemption under § 27-7-5-2(d) narrowly. But *DePrizio* is not determinative. Ten years after *DePrizio*, the Legislature

---

[7] Although the *DePrizio* Court interpreted an older version of the UM/UIM statute, the version of the statute that was in effect in October 2017, and the version in effect today, similarly require the insurer to "make available, in each automobile liability or motor vehicle liability policy of insurance . . . uninsured and underinsured motorist coverages." Ind. Code § 27-7-5-2(a) (2013; 2020).

amended the UM/UIM statute to add the exemption at issue here. Ind. Code § 27-7-5-2(d) (2009). Whether the amended statute includes a clear exemption for a policy that is "excess" over a retained limit, rather than underlying insurance (as in the *DePrizio* case), is the disputed question here.

* * *

For the above reasons, we cannot confidently predict how the Indiana Supreme Court would decide the question whether § 27-7-5-2(d)'s "commercial excess liability policy" exemption applies to the Policy.

*B. Retained Limit*

Both parties agree that under the Policy, the "retained limit" here operates as a condition precedent to ACE's obligation to provide liability coverage. Assuming the Policy is subject to the UM/UIM requirements of § 27-7-5-2(a), they dispute whether that statute allows ACE to invoke the retained limit as a condition precedent to its responsibility to provide UM/UIM coverage. *See Justice v. American Family Mutual Insurance Co.*, 4 N.E.3d 1171, 1177 (Ind. 2014) ("So long as the policy language comports with our state statutes, it will control, but if it is inconsistent with those statutes, it is unenforceable.") (citations omitted). This is a question of first impression. *See Loomis II*, 593 F. Supp. 3d at

40 ("[T]he Supreme Court of Indiana has not addressed whether the UM/UIM statute allows the enforcement of a retained limit in a UM/UIM policy.").

Loomis emphasizes that the Indiana UM/UIM statute mandates that insurers who provide automobile liability coverage also provide UM and UIM coverage "in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy," unless the insured rejects the UM/UIM coverage in writing. Ind. Code § 27-7-5-2(a). In Loomis's view, the only "limit[] of liability" in the Policy is the $7 million maximum limit of liability. The $3 million retained limit instead operates as a precondition to coverage, and nothing in the statute authorizes insurers to impose such conditions precedent to their statutory obligation to provide UM/UIM coverage. At a minimum, he contends, the meaning of "limits of liability" in this context is ambiguous.

Loomis argues that a contrary holding would fly in the face of the purpose of the UM/UIM statute, "which is to affirmatively place the obligation on an insurance company to obtain a written waiver or provide UIM coverage." Appellant's Brief at 16–17. According to Loomis, if ACE could impose a precondition that effectively eliminated any UIM coverage without obtaining a written waiver, that would work an end run around the statute's requirements

31

and would render ACE's statutory UIM coverage entirely illusory because there is no underlying UM/UIM coverage to exhaust the retained limit.

ACE focuses on the Policy's $3 million retained limit for liability coverage, and the clear policy language providing that ACE is liable only after exhaustion of that limit. It cites a litany of cases in which Indiana courts have, in the context of liability coverage, upheld such terms, holding the insurer liable only after the insured exhausts the retained limits. In ACE's view, there is no tension between its obligations under Indiana's UIM statute and the Policy's retained limit; rather, the retained limit "is simply a clear and unambiguous condition precedent that needs to be satisfied before ACE has any obligations at all." Appellee's Brief at 22. ACE contends that the Indiana Legislature could have, but did not, enact rules prohibiting such conditions precedent.

Our ability to resolve these competing arguments is limited by several factors. First and foremost, any analysis of the effect of the retained limit in the Policy on ACE's responsibility for UIM coverage rests on an assumption—that the exemption does not apply and thus the UIM mandate does apply—about which we are uncertain. Even if we could overcome that hurdle, in assessing the applicability of the retained limit in the Policy's liability terms to ACE's UIM coverage responsibility, we encounter many of the same obstacles discussed

32

above—the critical statutory term is undefined, the cases ACE relies on don't squarely apply, and the Indiana Supreme Court's relevant pronouncements are helpful but not determinative.

Because the question whether ACE can require Loomis to exhaust the $3 million retained limit arises only if the Policy is not exempt from the UM/UIM requirements of § 27-7-5-2(a), our uncertainty as to whether the Policy is exempt necessarily undermines our ability to answer this question. The debate about the impact of the retained limit takes place on purely hypothetical, and contested, terrain.

Moreover, once again, the pivotal statutory provision here is undefined. Indiana's UIM statute requires ACE to provide UM/UIM coverage to Loomis "in limits at least equal to the [Policy's] limits of liability" for bodily injury liability. Ind. Code § 27-7-5-2(a). But "limits of liability" is undefined. Clearly, the $7 million policy limit is part of the Policy's "limits of liability." The questions are whether 1) the $3 million retained limit—which operates as a coverage floor rather than a ceiling—is also part of the Policy's "limits of liability" for purposes of § 27-7-5-2(a); and 2) if not, whether ACE can nevertheless interpose that retained limit as a condition precedent to Loomis's UM/UIM claim.

As to the first question, Loomis may have the upper hand in arguing that the term "limits of liability" generally refers to the maximum available coverage, not the conditions precedent to coverage. *See Liability Limit*, Black's Law Dictionary (11th ed. 2019) (defining "liability limit" or "limit of liability" as "[t]he maximum amount of coverage that an insurance company will provide on a single claim under an insurance policy").

As to the second question, ACE's focus on cases enforcing retained limits in the context of liability policies is only marginally helpful. ACE cites a litany of cases to show that Indiana appellate courts have considered retained limits in liability insurance policies to be valid conditions precedent such that the insurer's *liability* coverage only kicks in when the retained limit is exhausted. But the enforceability of a contractual retained limit with respect to a liability insurance claim is not disputed. The question here is whether, because the Policy includes a $3 million retained limit for *liability* coverage, ACE's statutory obligation to provide *UIM* coverage to Loomis applies only after a $3 million "retained limit" has been exhausted. ACE's cases don't deal with UIM insurance at all, let alone address these questions. *See, e.g.*, *Langreck*, 816 N.E.2d at 495–96 (excess umbrella liability coverage atop underlying primary motor vehicle insurance and retained limits); *Allianz*, 884 N.E.2d at 410 (excess products

34

liability insurance over self-insured retention); and *Thomson Inc. v. Insurance Co. of North America*, 11 N.E.3d 982, 1009–10 (Ind. Ct. App. 2014) (commercial general liability policy excess of a retained limit).

Finally, as with the question whether the Policy is exempt under § 27-7-5-2(d), the Indiana Supreme Court's decisions in *City of Gary* and *DePrizio* offer some high-level insights, but are not determinative. As noted above, in *City of Gary*, the Court recognized that despite the broad remedial purposes of the UM/UIM statute, it leaves individuals insured for automobile liability through self-insured employers without the UM/UIM coverage that would apply if they were insured through commercial insurance. 612 N.E.2d at 119. But the Court's holding—that the UM/UIM statute only requires *insurers* to include UM/UIM coverage with their liability policies—offers ACE no refuge. Unlike Gary, Indiana, ACE *is* an insurer.

Likewise, *DePrizio* counsels that courts should not limit mandatory UM/UIM coverage "absent an explicit statutory exemption to the contrary." 705 N.E.2d at 464. The spirit of *DePrizio* supports Loomis generally—a $3 million retained limit on the UM/UIM side would effectively leave Loomis without *any* UM/UIM coverage. *See id.* at 461 (concluding that "history of expanding the availability of uninsured and underinsured motorist coverage" manifested an

intent by Indiana Legislature "to give insureds the opportunity for full compensation for injuries inflicted by financially irresponsible motorists"); *id.* at 460 (describing § 27-7-5-2 as "a mandatory coverage, full-recovery, remedial statute"). But *DePrizio* does not address whether a retained limit, as a condition precedent to liability coverage, is part and parcel of the "limits of liability" in the automobile liability policy that defines the insurer's statutory obligations with respect to UM/UIM coverage.

\* \* \*

For these reasons, we cannot confidently predict whether and how the Indiana Supreme Court would give effect to the retained limit in the Policy's liability coverage terms in assessing ACE's responsibility to provide Loomis UIM coverage.

### C. Certification

Rather than predict how the Indiana Supreme Court would resolve these difficult questions and risk doing violence to Indiana law, we recognize that the Indiana Supreme Court is far better equipped to provide answers. The Indiana Supreme Court authorizes certification from us on determinative questions of Indiana law on which there is "no clear controlling Indiana precedent." Ind. R.

36

App. P. 64(a).  Under our Local Rule 27.2, we may certify questions of Indiana law to the Indiana Supreme Court.

Factors that guide our decision whether to exercise our discretion to certify include 1) whether the Indiana Supreme Court has addressed the issue and, if it has not, whether the decisions of other Indiana courts allow us to predict how it would; 2) whether the questions are "of importance to the state and may require value judgments and public policy choices"; and 3) whether the certified questions are "determinative of a claim before us." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012).

As explained above, this case presents challenging legal questions about Indiana's UM/UIM statute's scope.  The Indiana Supreme Court has not construed the "commercial excess liability policy" exemption; nor has it considered whether a retained limit in a liability policy insulates an insurer from responsibility for UM/UIM coverage until a retained limit in equal amount is exhausted, even if there is no other UIM insurance to satisfy that limit. Moreover, resolving the competing arguments with respect to the two legal questions before us may call for the kinds of public policy judgments about Indiana law that the Indiana Supreme Court is better suited to make.  Finally, answers to our certified questions "could resolve this case." *Ministers &*

*Missionaries Benefit Board v. Snow*, 780 F.3d 150, 155 (2d Cir. 2015), *certified question*

*accepted*, 25 N.Y.3d 935 (2015).  As explained above, Loomis is not entitled to a

remedy under New York's SUM statute.  Thus, his ability to pursue his claim for

UM/UIM benefits under the Policy rises and falls with his arguments under

Indiana's UM/UIM statute.

## CONCLUSION

For the above reasons, we **AFFIRM** the district court's grant of summary

judgment as to Loomis's claim under New York law, but we defer decision on

the remaining issues in this appeal, and we **CERTIFY** the following questions to

the Indiana Supreme Court:

1. Is an insurance policy that provides automobile liability insurance in

   excess of a retained limit, as opposed to in excess of a primary liability

   insurance policy, a "commercial excess liability policy" within the

   meaning of Indiana Code § 27-7-5-2(d)?

2. If not, if an insurer issues an automobile liability policy with a $7 million

   liability limit applicable only after a $3 million retained limit is exhausted,

   is that insurer's statutory obligation to provide UIM coverage subject to a

   $3 million retained limit?

"Consistent with our usual practice, we do not intend to limit the scope of the [Indiana Supreme Court's] analysis through the formulation of our question[s], and we invite the [Supreme Court] to expand upon or alter th[ese] question[s] as it should deem appropriate."  *Nguyen v. Holder*, 743 F.3d 311, 317 (2d Cir. 2014) (internal quotation marks omitted).  This panel retains its jurisdiction.

It is therefore **ORDERED** that the Clerk of this Court transmit to the Clerk of the Supreme Court of the State of Indiana a Certificate, as set forth below, together with a copy of the case docket, including a complete set of briefs and appendices, and the record filed in this Court by the parties.

## CERTIFICATE

The foregoing is hereby certified to the Supreme Court of the State of Indiana pursuant to Second Circuit Local Rule 27.2 and Indiana Rule of Appellate Procedure 64, as ordered by the United States Court of Appeals for the Second Circuit.